IN THE CIRCUIT COURT OF THE 9TH
JUDICIAL CIRCUIT, IN AND FOR
ORANGE COUNTY, FLORIDA

CASE NO.:


DATAMAXX APPLIED TECHNOLOGIES,
INC., a Florida corporation,

      Plaintiff,

vs.

BROWN & BROWN, INC., d/b/a HALCYON
UNDERWRITERS, INC.,  EARL BACON,
AGENCY, INC., and CHUBB CUSTOM
INSURANCE COMPANY,

      Defendants.

_____/

## COMPLAINT

Plaintiff, DATAMAXX APPLIED TECHNOLOGIES, INC., (hereinafter, "Datamaxx"), by and through its undersigned counsel hereby sues Defendants, BROWN & BROWN, INC., d/b/a HALCYON UNDERWRITERS, INC., EARL BACON AGENCY, INC., and CHUBB CUSTOM INSURANCE COMPANY, and all facts being extent and material hereto, alleges:

## INTRODUCTORY ALLEGATIONS

1.    This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00).

2.    BROWN & BROWN, INC., d/b/a HALCYON UNDERWRITERS, INC., ("Halcyon"), is a for profit corporation authorized to do business in the State of Florida whose registered agent for service of process is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. According to BROWN & BROWN, INC.'s

1

filings with the United States Securities and Exchange Commission, Halcyon is listed as an "indirect subsidiary" of BROWN & BROWN, INC.  Furthermore, other corporate documents describe Halcyon as a "Brown & Brown Operational Brand Name," and lists Halcyon as a component within BROWN & BROWN, INC.'s "Wholesale Brokerage Segment."

3.     EARL BACON AGENCY, INC. (the "Bacon Agency"), is a for profit corporation authorized to do business in the State of Florida whose registered agent for service of process is Robert K. Bacon, 3131 Lonnbladh Road, Tallahassee, Florida 32308.

4.     CHUBB CUSTOM INSURANCE COMPANY ("Chubb"), is a corporation authorized to transact insurance in this state, and is authorized to do, and doing business throughout the State of Florida.

5.     Datamaxx is a Florida corporation that provides advanced communications, data access, information sharing, enterprise intelligence, and access control solutions to the law enforcement, criminal justice, public safety, and security industries.

6.     Datamaxx customers consist of, among others, security companies along with local, state and federal agencies including the S.A.F.E. Management, Whelan Event Services, Federal Bureau of Investigation, City of Miami Police Department, Louisiana State University, U.S. Army Corps of Engineers,  and U. S. Office of Personnel Management.

7.     Datamaxx customers use the company's software to conduct thorough, real-time background checks and access control solutions for a wide variety of needs.

8.     Datamaxx brings this complaint for declaratory relief pursuant to Chapter 86 of the Florida Statutes against its insurer, Chubb, seeking among other things a

declaration from this Court estopping Chubb from denying a defense of the claims brought against Datamaxx (explained in greater detail herein), and refusing to ultimately indemnify Datamaxx should it be found liable for such claims.

9.    Datamaxx further brings this complaint against Chubb, Halcyon and the Bacon Agency, pleading in the alternative and alleging Chubb, Halcyon and the Bacon Agency's negligent procurement of insurance coverage on Datamaxx's behalf as well as Chubb, Halcyon and the Bacon Agency's negligent misrepresentations related thereto.

10.    On or about December 22, 2011, Datamaxx entered into a purported Development and License Agreement (the "DLA") with Gold Type Business Machines, Inc. ("GTBM").  Pursuant to the terms of the DLA, Datamaxx and GTBM agreed to jointly develop, market and sell a product called "Greenlight."

11.    On or about May 8, 2014, Datamaxx and GTBM entered into a Confidential Settlement Agreement (the "Settlement Agreement") pertaining to prior litigation brought by GTBM against Datamaxx filed in the United States District Court for the District of New Jersey captioned *Gold Type Business Machines, Inc. v. Datamaxx Applied Technologies, Inc., and LSQ Funding Group, L.C.* (Case No. 2:13-cv-05727-CCC-MF)(hereinafter the "First GTBM Case" or the "First Case").

12.    At the time GTBM filed the First Case, Datamaxx was insured through various commercial insurance policies with American International Group ("AIG"). Following the commencement of the First GTBM Case, Datamaxx promptly put AIG on notice of the claims being made by GTBM and promptly forwarded the operative papers commencing the First Case.  Upon receiving the operative papers, AIG refused to both defend and indemnify Datamaxx for the claims arising under the First GTBM Case.

13.     Despite AIG's initial denial of coverage, Datamaxx and AIG were ultimately able to reach an amicable resolution of the coverage dispute that resulted from the commencement of the First GTBM Case.  Datamaxx originally obtained coverage under the AIG policies by working with J. Smith Lanier & Company.

14.     According to its website, the Bacon Agency describes itself as follows:

> The Earl Bacon Agency is one of the oldest and largest independent insurance agencies in North Florida. Founded in 1963 by Jane and Earl Bacon, the Earl Bacon Agency provides business and family insurance services throughout Florida. Earl Bacon Agency has an experienced and dedicated staff of professionals who work in all areas of insurance: Homeowners, Automobile, Workers' Compensation, Life, Health, Professional Liability, Business and Property protection.

> Bringing together a select group of the world's largest and most financially stable insurance carriers with specialty companies that focus principally on the Florida region, the **Earl Bacon Agency experts** are able to **match your insurance requirements** to the most appropriate market. Contact us for the answers to your insurance questions.

15.     Relying on the Bacon Agency's expertise, and hoping to avoid any future coverage disputes with its insurers, Datamaxx met with the Bacon Agency after the resolution of the First GTBM Case.  Datamaxx's express intentions during its meeting with the Bacon Agency were clear - secure insurance coverage to protect Datamaxx from claims by third parties, including but not limited to claims that Datamaxx violated the various development and license agreements with Datamaxx's business partners.

16.     During their meetings, Datamaxx advised the Bacon Agency of Datamaxx's intention of procuring insurance coverage so as to avoid similar insurance coverage disputes in the future that were similar to the coverage dispute with AIG wherein AIG initially denied coverage for indemnity and defense for the First GTBM Case.

17.     Datamaxx explained to the Bacon Agency, and later explained to Halcyon and Chubb, that Datamaxx sought insurance coverage to ensure that should GTBM or

other entities make subsequent and similar claims to those brought under the First GTBM Case, Datamaxx would have coverage for the indemnity and defense of those claims.

18.    At the recommendation of the Bacon Agency, Datamaxx was introduced to representatives of Halcyon.   Through its meetings with Halcyon and in subsequent communications with Chubb, Datamaxx explained the nature of its business and its use of development and license agreements with various business partners.

19.    Datamaxx explained at length to Halcyon, and later explained to the Bacon Agency and Chubb, the insurance coverage issues and Datamaxx's exposure that arose from the First GTBM case.   During its meeting with the Bacon Agency and Halcyon, Datamaxx described and provided documentation showing the Bacon Agency and Halcyon what Datamaxx's litigation exposure consisted of, including but not limited to claims similar to those brought forward in the First GTBM Case.

20.    During its meetings with the Bacon Agency and Halcyon, Datamaxx explained how it needed more robust coverage to insure future claims similar to those brought under the First Arbitration Case were covered both in terms of indemnity for liability and defense costs which would allow Datamaxx to properly defend itself.

21.    After multiple communications between Halcyon and Datamaxx, and at all times working in conjunction with the Bacon Agency, Halcyon proposed Datamaxx purchase commercial insurance coverage through Chubb.

22.    Like the Bacon Agency, Halcyon also presents itself to the public as experts in meeting the insurance needs of customers such as Datamaxx.   Halcyon's website explains:

> We are the next gen, hybrid wholesaler. Halcyon Underwriters'
> **relationship-based model** has cast a nationwide footprint with both our
> retail and carrier partners. For over 32 years, Halcyon has and continues to

perform as more than a traditional intermediary, offering a variety of coverages in the P&C and Personal Lines industries on a monoline or package basis. Halcyon provides market access, **specialty program availability** and competitive pricing through A-Rated, Admitted as well as Non-Admitted Carriers.

Our multi-generational group of **professionals provide expertise combined with forward looking, creative based**, comprehensive and competitive opportunities to the over 2,500 retail partners we serve. Halcyon's front-line underwriting, risk selection, portfolio management, responsiveness and continued partner education opportunities drive our retailers to profitably grow their business.

Halcyon's **underwriting practices**, client retention, continued organic growth, data analytics, risk management and efficiency deliver profitable performance results for our carrier partners in both soft and hard markets earning Halcyon preferred designations with most of our carrier partners.

23.     During the Bacon Agency and Halcyon's assessment of Datamaxx's insurance needs, the two put Datamaxx in direct contact with Chubb underwriters, allowing Datamaxx to ask specific questions regarding Datamaxx's litigation exposure and Chubb's ability to provide coverage.

24.     As a result of Datamaxx's communications with the Bacon Agency, Halcyon and Chubb, Datamaxx was presented with a proposed insurance policy to provide indemnity and defense coverage for claims similar to those brought against Datamaxx in the First GTBM Case.

25.     Chubb, the Bacon Agency and Halcyon, working together, presented Datamaxx with a "Primary Customarq Classic Insurance Program Policy" which constituted (according to Chubb) a "Claims-Made Integrated Liability and Indemnity Insurance" policy which was modified by a "Integrated Liability and Indemnity Insurance Extension for Technology," further containing a "Intellectual Property, Disclosure and Reputation Disparagement Liability" containing an aggregate limit of coverage for

$5,000,000, subject to a $50,000 deductible per claim (hereinafter, the "Proposed Policy").

26.     After Chubb presented the Proposed Policy to Datamaxx for consideration, Datamaxx consulted with both the Bacon Agency and Halcyon, and later consulted with Chubb, to receive their professional opinions on whether the Proposed Policy would provide Datamaxx with the indemnity and defense coverage Datamaxx requested and needed following the First GTBM Case.

27.     Both the Bacon Agency and Halcyon, and eventually Chubb, assured Datamaxx that the Proposed Policy would provide Datamaxx with the coverage Datamaxx needed to cover claims and defense costs arising from claims similar to the First GTBM Case.

28.     Indeed, before Datamaxx made a decision on whether to follow the recommendations of the Bacon Agency and Halcyon and purchase a Chubb policy, Datamaxx's co-founder and CEO, Kay Stephenson, wrote to Chubb to seek written confirmation that Datamaxx's litigation exposure and defense costs were properly covered for claims arising under the DLA.

29.     On April 13, 2017, Ms. Stephenson wrote the following hypothetical to Chubb's underwriter's **before deciding whether to purchase** Chubb's Proposed Policy:

> Intellectual Property Laws or Rights (Except Coverage D) - This section appears to exclude infringement of any intellectual property rights. Datamaxx has numerous Development & License Agreements with third parties and must have proper coverage.  Does this section exclude coverage?

30.     Through her email, Ms. Stephenson was proposing a question to the Chubb underwriter seeking clarification of page 31 of the Chubb Proposed Policy titled "Intellectual Property Infringement."

31.     In response to Ms. Stephenson's questions regarding coverage, an underwriting employee from Chubb responded:   "[p]lease refer to your first question above and the definition of IP.  **It's not excluded**."  *See* email correspondence between Ms. Stephenson and Chubb dated April 18, 2017 (hereinafter the "Coverage Email"), attached hereto as **Exhibit "A"**.

32.     After reviewing the language of the Proposed Policy, and relying on the written confirmation by Chubb's underwriters that alleged violations of development and license agreements would be covered, Datamaxx decided to purchase insurance coverage through Chubb.

33.     In making its decision to purchase insurance from Chubb, Datamaxx relied upon the skill and expertise of Chubb's agents, the Bacon Agency and Halcyon. Datamaxx also relied upon Chubb's underwriter employee who provided written confirmation of Datamaxx's coverage for liability exposure for claims like those brought in the Second GTBM Case.

## THE INSURANCE POLICIES

34.     Chubb issued Datamaxx a Primary Customarq Classic Insurance Program Policy, bearing Policy No. 3590-65-36, for the newline initial policy period of April 15, 2017 to April 15, 2018 (the "Chubb Policy" or "Policy").  A copy of the Policy is attached hereto as **Exhibit "B"**.

35.     The Policy includes Claims-Made Integrated Liability and Indemnity Insurance coverage provided via Form 80-02-6016, as modified by Form 80-02-6017 titled Integrated Liability and Indemnity Insurance Extension for Technology.  Coverage "D", via Form 80-02-6016 for Intellectual Property, Disclosure and Reputation

Disparagement Liability maintains an Aggregate Limit of $5,000,000 subject to a $50,000 deductible per claim.

36.     The Policy contains a Retroactive Date in effect for Coverage D extending back to February 21, 2012.  *See* Chubb Explanation of Coverages Dated December 17, 2018 (the "Denial Letter") at p.3, attached hereto as **Exhibit "C"**.

37.      In addition to the Chubb Policy, Datamaxx also purchased a second policy written by Pacific Indemnity Company that provides commercial general liability coverage under numbered Policy No. 3590-65-35 providing consecutive annual coverage from April 15, 2017 to April 15, 2019 (the "PIC Policy").  *Id.*

38.     Finally, Datamaxx purchased a third policy written by Federal Insurance Company (the "FIC Policy")  that provides commercial excess and umbrella coverage under numbered Policy No. 7984-92-07, providing consecutive annual coverage from April 15, 2017 to April 15, 2019. *Id.*

## THE SECOND ARBITRATION CASE & DENIAL OF COVERAGE

39.     On October 29, 2018, GTBM filed a Statement of Claim of Arbitration against Datamaxx seeking damages from, and an injunction against, Datamaxx for its alleged breach of the parties' purported DLA (the "Second GTBM Case" or the "Second Case").  According to GTBM, Datamaxx is engaging in activities which require Datamaxx to utilize technology, software and information which Datamaxx allegedly obtained through the DLA.  *See* Demand for Arbitration and Statement of Claim, attached hereto as **Exhibit "D"**.

40.     Through the Second Case, GTBM alleges that Datamaxx has breached, and continues to breach the DLA because Datamaxx is utilizing GTBM's technology, software and information to compete against GTBM (among other allegations).  GTBM

also alleges, among others, that Datamaxx harmed GTBM by causing irreparable injury to GTBM's reputation, goodwill, market share and ability to exercise control over GTBM's "other confidential information."

41.     Datamaxx immediately notified the Bacon Agency, Halcyon and Chubb of GTBM's Demand for Arbitration through the American Arbitration Association.  GTBM's Demand for Arbitration is dated October 29, 2018 and seeks commencement of an arbitration proceeding in New Jersey.

42.     At the same time that Datamaxx forwarded GTBM's Demand for Arbitration to Chubb, Datamaxx's senior management immediately began communicating with Chubb, requesting that Chubb confirm it would both defend Datamaxx in the arbitration proceeding and indemnify Datamaxx for any liability it may have resulting from the Second GTBM Case.

43.     Pursuant to Chubb's Denial Letter, "[i]t is the position of Chubb that there is no coverage for the AAA Demand [i.e. the Second GTBM Case] and no duties are triggered on behalf of Datamaxx under the Int. Tech. Policy for the allegations set forth by GTBM."  *See* Denial Letter, attached hereto as **Exhibit "C"** at pg. 4.

44.     Chubb has now denied all coverage obligations under the Policy.

45.     Pursuant to p. 4 of Chubb's Denial Letter, Chubb denies coverage for the Second GTBM Case because such claims allegedly "pre-date the initial Chubb policy period of April 15, 2017 to April 15, 2018."  **Exhibit "C"** at pg. 3, p. 4.

46.     The Second GTBM Case centers around Datamaxx's purported breach of the DLA for activities that did not commence until the Fall of 2018.  Through the Second GTBM Case, which GTBM commenced on October 29, 2018, GTBM alleges Datamaxx breached the DLA starting within the last six months.

47.     The Chubb Policy for which Datamaxx seeks coverage contains a Retroactive Date to February 21, 2012.  By its own terms, the Policy covers the claims underlying the Second GTBM Case from February 21, 2012 through the present.

48.     Chubb further denies coverage for the Second GTBM Case, arguing that the Policy's definition of intellectual property does "not include any violation of any license granted to any insured; infringement upon any software or its source content or material; other computer code or its source content or material."  *See* Denial Letter, attached hereto as **Exhibit "C"**.

49.     Chubb now denies Datamaxx coverage under the Policy, despite Chubb's prior written confirmation to Datamaxx, which Datamaxx detrimentally relied upon, that as to claims alleging violations of  Datamaxx's development and licenses agreements "it's **_not_** excluded."  *See* Coverage Email attached hereto as **Exhibit "A"**.

50.     Datamaxx relied upon Chubb's Coverage Email, which contained confirmation of coverage for claims alleging a violation of license agreements.  Datamaxx relied on Chubb, in part, because Chubb's written confirmation of coverage came from a Chubb underwriter.

51.     Chubb wrote the Coverage Email to Datamaxx to induce Datamaxx to purchase the Policy.

52.     At all times relevant to this action, the Bacon Agency and Halcyon acted as actual, statutory and/or apparent agents of Chubb when advising Datamaxx it should purchase the Policy.

## COUNT I

## <u>DECLARATORY RELIEF</u>

53.     Plaintiff, Datamaxx, hereby re-adopts, re-alleges and re-affirms each and every allegation contained in paragraphs (1) through (52) of this Complaint as though fully alleged herein and further alleges:

54.     This is an action for Declaratory Relief pursuant to Chapter 86 of the Florida Statutes.

55.     The subject Policy covers the claims brought against Datamaxx through the Second GTBM Case.  Coverage D of the Policy provides in relevant part:

**Coverage D – Intellectual Property, Disclosure and Reputation Disparagement Liability:**

Subject to all of the terms and conditions of this insurance, we will pay damages and claimant costs that the insured becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an indemnity contract, for injury caused by an act that results in actual or suspected:

- disclosure of confidential information;
- intellectual property infringement; or
- **reputation disparagement**.

This coverage does not apply to damages, loss, cost or expense arising out of any actual or suspected:

A.     defect, deficiency, inadequacy or dangerous condition in:

1.     your product; or
2.     your service; or

B.     failure:

1.     of your product to perform; or
2.     to perform your service;

in accordance with the terms of a contract or agreement.

**Claims-Made Liability Coverage Common Provisions:**

12

A. With respect to all claims-made coverage, this insurance applies only if:

 1. such act was not first committed before the applicable Retroactive Date shown in the Declarations or after the end of the policy period; and

 2. a claim by a person or organization for damages for such injury (including a claim for injunctive relief to prevent such injury from continuing or resuming) is first made against any insured:

  a. after the beginning of the policy period;

  b. before the end of the policy period; or

  c. during the Extended Reporting Period we provide, as described in the Extended Reporting Periods section of this policy.

B. A claim will be deemed to have been made at the earliest of the following times, when:

 1. notice of such claim is received and recorded by any insured or by us;

 2. notice of a circumstance that correlates with such claim or injury is received and recorded by us; or

 3. we, at our discretion, make a settlement for such injury.

C. All claims that correlated with an act will be deemed to have been made at the time the first of such claim is deemed to have been made.

D. If there is no other insurance, subparagraph A.2.b. above will not apply to claims made after the end of the policy period of this insurance, if such claims correlate with an act and such act also correlates with:

 1. a claim previously made during the policy period of this insurance; or

 2. a circumstance previously notified to us during the policy period of this insurance.

E.   If a notice of a circumstance is received and recorded by us not more than 60 days after the end of the policy period, then such notice will be deemed to have been received by us during the policy period.

F.   This coverage does not apply to any damages, loss, cost or expense in connection with any claim that correlates with an act, if such act correlates with any claim deemed to have been made before the beginning of the policy period.

The most we will pay hereunder is fixed as set forth in the Limits of Insurance section of this contract.

Our obligations hereunder is fixed as set forth in the Limits of Insurance section of this contract.

Other than as provided in the Investigation, Defense and Settlement Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

56.     Pursuant to the terms of the Policy, claims made under Coverage D are covered pursuant to a "Retroactive Date" of February 21, 2012.  The Policy contains numerous pages of "Definitions" within the policy, however, the Policy does not define "Retroactive Date" for coverages.

57.     GTBM commenced the First GTBM case on September 26, 2013.  GTBM commenced the Second GTBM case on October 29, 2018.  Datamaxx notified Chubb of the Second GTBM case on October 29, 2018.

58.     All acts Datamaxx is alleged to have committed under the Second GTBM case occurred **after** the applicable Retroactive Date shown within the Policy, that date being February 21, 2012.

59.     According to GTBM's Statement of Claim, Datamaxx's alleged wrongful actions forming the basis for the Second GTBM case began September 21, 2018, several

years past the Retroactive Date and well within April 15, 2018 stated "Effective Date" for coverage under the Policy.

60.     The Policy defines "Intellectual Property Infringement" to include:

**Intellectual Property Infringement:**

A.     means infringement upon a person's or organization's:

1.     collective mark, service mark or other trademarked logo, name, slogan, title or other symbol;

2.     copyright; or

3.     Internet domain name or email address.

B.     does not include any:

1.     violation of any license granted to any insured.

2.     infringement upon any:

a.     software or its source content or material;

b.     other computer code or its source content or material; or

c.     other expression, method or process designed to control or facilitate any operation or other use of any computer or other automated system.

3.     disclosure of confidential information or reputation disparagement.

61.     The Policy defines "Reputation Disparagement" as follows:

**Reputation Disparagement:**

A.     means

1.     electronic, oral, written or other:

a.     publication of content, information or material that libels or slanders a person or organization;

       b.     publication of content, information or material that **disparages** a person's or organization's goods, products or services; or

       c.     publication, disclosure or other content, information or material that violates a person's right of privacy or right of publicity.

    2.     false arrest, false detention or other false imprisonment.

    3.     malicious prosecution.

    4.     wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lesser or owner.

    5.     discrimination, harassment or segregation based on a person's protected human characteristics as established by law.

  B.    does not include disclosure of confidential information or intellectual property infringement.

62.    Pursuant to its own terms, the Policy covers "oral … publication of … information or material that __disparages__ a … organization's goods, products or services."

63.    In each of the five (5) claims brought by GTBM in its Second Case against Datamaxx, GTBM alleges that Datamaxx harmed GTBM by causing irreparable injury to GTBM's reputation, goodwill, market share and ability to exercise control over GTBM's "other confidential information."

64.    "Disparage," though not defined within the Policy, is defined as "to depreciate by indirect means" or to "lower in rank or reputation."

65.    GTBM's claims against Datamaxx constitute claims of "Reputation Disparagement" triggering coverage under the Policy.

66.     Defendant Chubb acknowledges and admits to Datamaxx in writing that GTBM's Second Case against Datamaxx "alleges harm to their reputation …"  *See* Denial Letter at p. 4, attached hereto as **Exhibit "C"**.

67.     The Policy contains a list of exclusions, none of which apply to the instant action, meaning none of the exclusions bar coverage for Datamaxx's liability and defense for the claims brought in the Second GTBM Case.

68.     In violation of the terms of the Policy, Chubb alleges the following exclusion applies:

**Exclusions:  Intellectual Property Laws or Rights (Except Coverage D)**

A.      This insurance does not apply to any damages, loss, cost, or expense arising out of, giving rise to or in any way related to any actual, alleged or threatened:

1.      assertion; or

2.      infringement or violation;

by any person or organization (including any insured) of any intellectual property law or right.

Further, this insurance does not apply to the entirety of allegations in any claim or suit, if such claim or suit includes an allegation of or a reference to an infringement or violation of any intellectual property law or right, even if this insurance would otherwise apply to any part of the allegation in the claim or suit.

B.      With respect to Coverage D only, this exclusion applies:

1.      unless the only infringement or violation of an intellectual property law or right is one that is **described in the definition of intellectual property infringement**; and

2.      a Limit of Insurance applicable to intellectual property infringement is shown in the declaration.

69. None of the enumerated exclusions are a basis to deny both a defense as well as an indemnity for the claims brought against Datamaxx in the Second GTBM Case.

70. None of the enumerated exclusions are a basis to deny indemnity for the damages sought in the Second GTBM Case for claims one (1) through five (5) alleged by GTBM against Datamaxx in the Second GTBM case.

71. On the facts of this case, Datamaxx is in doubt as to its rights under the terms and provisions of the subject Policy and Florida law.

WHEREFORE, Plaintiff, Datamaxx Applied Technologies, Inc., respectfully requests this Court:

A)   Take jurisdiction over this matter for purposes of rendering a declaratory/injunctive decree;

B)   Having taken jurisdiction, that this Court enter an order declaring that Chubb by virtue of the allegations and, the relief requested in the Second GTBM Case, in light of the language of the exclusions in the subject Policy, is required to both defend and indemnify Datamaxx;

C)   Enter an order that by virtue of such conduct, contrary to the provisions of the aforesaid Policy, and Florida law, Chubb is estopped from denying both a defense and indemnifying Datamaxx;

D)   Chubb be required to reimburse its insured, Datamaxx, for any expense it has incurred thus far for defending itself in the instant Second GTBM Case;

E)   Grant both preliminary and permanent injunctive relief to prevent any further harm resulting from such acts and/or omissions of Chubb;

F)   Grant such other relief as this Court deems proper, pursuant to Fla. Stat. § 86.061;

G)   Retain jurisdiction over the parties and the subject matter to assess reasonable attorney's fees and costs to Datamaxx's counsel pursuant to Fla. Stat. § 627.428, and any and all penalties this Court deems just and appropriate.

**COUNT II**

**NEGLIGENT FAILURE TO PROCURE AGAINST
DEFENDANTS BACON AGENCY AND HALCYON,
INDIVIDUALLY AND AS AGENTS OF DEFENDANT
CHUBB AND AGAINST DEFENDANT CHUBB**

Plaintiff, Datamaxx, hereby re-adopts, re-alleges and re-affirms each and every allegation contained in paragraphs one (1) through (52) of this Complaint as though fully alleged herein and further alleges:

72.     Defendant Chubb, through its officers, principals, agents, servants and/or employees, had a duty to Plaintiff, Datamaxx, to exercise reasonable skill, care and diligence in evaluating Datamaxx's insurance needs, and/or to advise Datamaxx that Chubb could not fulfill Datamaxx's needs, if that was the case.

73.     Likewise, Defendants Bacon Agency and Halcyon, individually and as officers, principals, agents, servants and/or employees of Defendant Chubb, had a duty to Datamaxx to exercise reasonable skill, care and diligence in evaluating Datamaxx's insurance needs, and to advise and recommend the appropriate insurer and plan to serve such needs, and/or advise Datamaxx that they could not fulfill Datamaxx's needs, if that was the case.

74.     Further, as a general rule of insurance law, the acts of the insurer's agent and facts within the knowledge of the insurer's agent is knowledge imputed to the insurance carrier itself. *See e.g. Gilbert v. Liberty Bankers Life Ins. Co.*, No. 15-21425-CIV, 2016 WL 1573166, at *4 (S.D. Fla. Apr. 19, 2016); *Zawilski v. Golden Rule Ins. Co.*, No. 8:10-CV-1222-T-33AEP, 2011 WL 3359658, at *4 (M.D. Fla. Aug. 4, 2011) (citing *Almerico v. RLI Ins. Co.*, 716 So.2d 774, 776 (Fla. 1998)); *Desantolo v. John Alden Life Insurance Co.*, 744 So.2d 1123 (Fla. 4th DCA 1999); *Straw v. Associated*, 728 So.2d 354

(Fla. 5th DCA 1999); *Gaskin v. General Insurance Company of Florida*, 397 So.2d 729 (Fla. 1st DCA 1981).

75.     Thus, Defendant Chubb also had a duty to Plaintiff Datamaxx to exercise, through its agents, servants and/or employees, reasonable skill, care and diligence in evaluating Datamaxx's insurance needs, to advise and recommend the appropriate insurer to serve such needs, and/or to advise Datamaxx that Chubb could not fulfill its needs, if that was the case.

76.     Defendants Chubb, individually and through its agents, servants and/or employees, Bacon Agency and Halcyon, as well as Bacon Agency and Halcyon in their individual capacities, were negligent and breached their duties by, among other things:

> a.     Failing to investigate and compare Datamaxx's prior or existing insurance coverage with the Policy sold to Datamaxx;

> b.     Failing to inform and/or fully educate Datamaxx as to the meaning of the terms contained in and the limitations of the Policy sold to Datamaxx;

> c.     Incorrectly representing to Datamaxx that the subject Policy would replace or expand prior or existing insurance coverage under Datamaxx's prior insurance policy;

> d.     Failing to research whether other insurers in Florida offered the insurance coverage that Datamaxx specifically explained it needed and desired;

> e.     Failing to inform Datamaxx that the subject Policy would or could not provide the type of insurance coverage Datamaxx desired;

> f.     Failing to know and advise Datamaxx regarding whether they could procure coverage that would not

exclude claims like those brought forward in the Second GTBM Case;

g.      Failing to correctly represent the terms and scope of the subject Policy, including exclusions, definitions and endorsements;

h.      Failing to procure a policy in accord with Datamaxx's expressed insurance needs and desires, including but not limited to procuring insurance for claims such as those brought forth in the First and Second GTBM Cases; and,

i.      Failing to explain to Datamaxx it could not procure the insurance it sought, if that was in fact the case.

77.      As a direct and proximate result of Chubb's, as well as Bacon Agency and Halcyon, individually and as officers, principals, agents, servants and/or employees of Defendant Chubb, conduct stated herein, Datamaxx was caused to suffer actual, reasonably foreseeable, consequential and incidental damages, including, but not limited to:

a.      Loss of such policy benefits;
b.      Loss of continuing premiums;
c.      Past and future defense costs;
d.      Loss of use of such monies.

78.      As a direct and proximate result of Defendant, Chubb's negligence through the acts of its agents, servants and/or employees, Defendants Bacon Agency and Halcyon, Defendant Chubb caused Datamaxx to suffer actual, reasonably foreseeable, consequential and incidental damages, including but not limited to:

a.      Loss of such policy benefits;
b.      Loss of continuing premiums;
c.      Past and future defense costs;
d.      Loss of use of such monies.

WHEREFORE, Plaintiff Datamaxx demands judgment against Defendants Bacon Agency and Halcyon, individually and as officers, principals, agents, servants and/or employees of Defendant Chubb, as well as against Defendant Chubb, plus attorneys' fees against the Defendants pursuant to Florida Statutes § 627.428, interest on all liquidated sums, taxable costs and demand a trial by jury on all issues so triable.

## COUNT III

### NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS BACON AGENCY AND HALCYON, INDIVIDUALLY AND AS AGENTS OF DEFENDANT CHUBB, AND AGAINST DEFENDANT CHUBB

Plaintiff, Datamaxx, hereby re-adopts, re-alleges and re-affirms each and every allegation contained in paragraphs (1) through (52) of this Complaint as though fully alleged herein and further alleges:

79.    Defendant Chubb, through its officers, principals, agents, servants and/or employees, Defendants Bacon Agency and Halcyon, had a duty to Plaintiff, Datamaxx, to represent all material facts related to the procurement of Datamaxx's Policy truthfully and accurately.

80.    Likewise, Defendants Bacon Agency and Halcyon, individually and as officers, principals, agents, servants and/or employees of Defendant Chubb, had a duty to Plaintiff Datamaxx to represent all material facts related to the procurement of the Policy truthfully and accurately.

81.    Further, as a general rule of insurance law, the acts of the insurer's agent and facts within the knowledge of the insurer's agent is knowledge imputed to the insurance carrier itself. *See e.g. Gilbert v. Liberty Bankers Life Ins. Co.*, No. 15-21425-CIV, 2016 WL 1573166, at *4 (S.D. Fla. Apr. 19, 2016); *Zawilski v. Golden Rule Ins. Co.*, No. 8:10-CV-1222-T-33AEP, 2011 WL 3359658, at *4 (M.D. Fla. Aug. 4, 2011) (citing

*Almerico v. RLI Ins. Co.*, 716 So.2d 774, 776 (Fla. 1998)); *Desantolo v. John Alden Life Insurance Co.*, 744 So.2d 1123 (Fla. 4th DCA 1999); *Straw v. Associated*, 728 So.2d 354 (Fla. 5th DCA 1999); *Gaskin v. General Insurance Company of Florida*, 397 So.2d 729 (Fla. 1st DCA 1981).

82.     As a result, Defendant Chubb had a duty to Plaintiff Datamaxx to truthfully represent - through its agents, servants and/or employees, Bacon Agency and Halcyon - all material facts related to the procurement of Datamaxx's Policy.  Likewise, Defendants Bacon Agency and Halcyon had an independent duty to truthfully represent all material facts related to the procurement of Datamaxx's Policy.

83.     However, Defendant Chubb, individually and through its agents, servants and/or employees, Bacon Agency and Halcyon, as well as Bacon Agency and Halcyon in their individual capacities, misrepresented material facts to Datamaxx that they: 1) knew were misrepresentative; 2) should have known were misrepresentative; or 3) did not know were true or false but represented anyway.

84.     Specifically, Defendants Chubb, individually and through its agents, servants and/or employees, Bacon Agency and Halcyon, as well as Bacon Agency and Halcyon in their individual capacities, misrepresented, among other things, the following material facts to Datamaxx:

    a.     Defendants Chubb, Bacon Agency and Halcyon understood Datamaxx's liability exposure from assessing Datamaxx's business and whether the Policy provided coverage for Datamaxx's liability exposure for claims such as those brought against Datamaxx in the Second GTBM Case;

    b.     Defendants Chubb, Bacon Agency and Halcyon understood Datamaxx's liability exposure and insurance needs as a result of the claims brought against Datamaxx in the First GTBM Case and that the Policy provided coverage for Datamaxx's liability exposure for claims such as those brought against

Datamaxx in the Second GTBM Case;

c.   Datamaxx was assured that the Policy would cover Datamaxx for claims similar to those brought in the Second GTBM Case without regard to language in the Policy.

85.   Conversely, Defendants Chubb, the Bacon Agency and Halcyon failed to represent, among other things, the following material facts to Datamaxx:

a.   Datamaxx was not advised that the Bacon Agency and Halcyon, through their licenses and/or appointments with Chubb, could not obtain, or would not obtain, an insurance policy that would cover Datamaxx's insurance needs, including coverage of claims like those brought under the Second GTBM Case;

b.   Datamaxx was not advised by Chubb that Chubb could not provide, or would not provide, an insurance policy that would cover Datamaxx's insurance needs, including coverage of claims like those brought under the Second GTBM Case;

c.   Datamaxx was not advised that the Policy procured for Datamaxx by Chubb, the Bacon Agency and Halcyon would not cover Datamaxx's expressly stated insurance needs, including coverage for claims like those brought under the Second GTBM Case;

d.   Datamaxx was not advised that there were other coverage options available to insure Datamaxx was covered for claims like those brought under the Second GTBM Case; and,

e.   Datamaxx was not advised they could procure coverage that would not exclude claims like those brought under the Second GTBM Case.

86.   Defendant Chubb, individually and through its agents, servants and/or employees, Bacon Agency and Halcyon, as well as Bacon Agency and Halcyon in their individual capacities, intended to induce Datamaxx to act on Chubb, Bacon Agency and Halcyon's misrepresentations and omissions of material facts, and Datamaxx did in fact rely on Defendants Chubb, Bacon Agency and Halcyon's misrepresentations and omissions of material facts, ultimately purchasing the Policy.

87.     Thus, Datamaxx justifiably relied upon  Defendants Chubb, Bacon Agency and Halcyon's misrepresentations and omissions of material facts to Datamaxx's detriment.

88.     As a direct and proximate result of Chubb's, as well as Bacon Agency and Halcyon, individually and as officers, principals, agents, servants and/or employees of Defendant Chubb, conduct stated herein, Datamaxx was caused to suffer actual, reasonably foreseeable, consequential and incidental damages, including, but not limited to:

      a.     Loss of such policy benefits;
      b.     Loss of continuing premiums;
      c.     Past and future defense costs;
      d.     Loss of use of such monies.

89.     As a direct and proximate result of Defendant, Chubb's negligence through the acts of its agents, servants and/or employees, Defendants Bacon Agency and Halcyon, Defendant Chubb caused Datamaxx to suffer actual, reasonably foreseeable, consequential and incidental damages, including but not limited to:

      a.     Loss of such policy benefits;
      b.     Loss of continuing premiums;
      c.     Past and future defense costs;
      d.     Loss of use of such monies.

WHEREFORE, Plaintiff Datamaxx demands judgment in excess against Defendants Bacon Agency and Halcyon, individually and as officers, principals, agents, servants and/or employees of Defendant Chubb, as well as against Defendant Chubb, plus attorneys' fees against Defendant Chubb pursuant to Florida Statutes § 627.428, interest on all liquidated sums, taxable  costs and demand a trial by jury on  all issues so

triable.

Date:  March 4, 2019.

LIGGIO LAW, P.A.
The Barristers Building, Ste. 3B
1615 Forum Place
West Palm Beach, FL 33401
Telephone: (561) 616-3333
Facsimile: (561) 616-3266
Email: emailservice@liggiolaw.com
          jliggio@liggiolaw.com
          jcornell@liggiolaw.com

By:     /s/ L. Jason Cornell
          L. JASON CORNELL, ESQ.
          Florida Bar No.: 84012
          JEFFREY M. LIGGIO
          Florida Bar No.: 357741

**From:** Natalie Staruch [mailto:nstaruch@halcyonuw.com]
**Sent:** Monday, April 17, 2017 1:50 PM
**To:** Will Messer; Cindi Cavallaro
**Cc:** Augusta Godinho
**Subject:** RE: Datmaxx --- Request for Written Clarification Re Chubb Proposal

Hi Will,

Please see the attached responses in Blue from our underwriter.

Thanks!

*Natalie*

**Natalie Staruch | Assistant Underwriter | Middle Markets**
Halcyon Underwriters | 2301 Lucien Way - Suite 360| Maitland, FL  32751
D: 407-660-1857 | P:  407-660-1881 x 357| F:  407.660.0525
nstaruch@halcyonuw.com | www.halcyonuw.com



FOLLOW US ON SOCIAL MEDIA





POLICY BIND / ALTER / CHANGE NOTICE
Insurance coverage cannot be bound, amended or cancelled  via email message without confirmation from an authorized representative
of Halcyon  Underwriters.

CONFIDENTIALITY NOTICE:  The information contained in this communication, including attachments may contain privileged and confidential
information that is intended only for the exclusive use of the addressee. If the reader of this message is not the intended recipient, or the
employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by telephone
immediately at 407-660-1881. Thank you

-------- Original message --------
From: Will Messer <wmesser@earlbacon.com>
Date: 4/14/17 8:45 AM (GMT-05:00)
To: Augusta Godinho <agodinho@halcyonuw.com>
Cc: Cindi Cavallaro <cindi@earlbacon.com>
Subject: FW: Request for Written Clarification Re Chubb Proposal

EXHIBIT ___

Augusta,

Can you help me clarify some of the questions coming from Kay Stephenson of Datamaxx? Please see attached.

Thanks,

Will Messer
The Earl Bacon Agency
*"Specializing in Insurance & Bonds"*
PO Box 12039
Tallahassee, FL 32317-2039
850-408-4992 (cell)
850-878-2121 (office)
**HOW ARE WE DOING?  REVIEW US ON GOOGLE PLUS BY CLICKING THE
LINK:** https://plus.google.com/+EarlBaconAgencyTallahassee/about?hl=en

**From:** Kay Stephenson [mailto:Kay.Stephenson@datamaxx.com]
**Sent:** Thursday, April 13, 2017 2:27 PM
**To:** Will Messer
**Cc:** Stephani Miller; Christina Lake; Christina Poulos
**Subject:** Request for Written Clarification Re Chubb Proposal

Will:

Pursuant to our telephone conversation today and after review of the Chubb Proposal, attached hereto are questions that Datamaxx requires be clarified, in writing, as soon as possible.

If you have any questions after reviewing the attached, please let me know.  I understand we are under a time crunch so we should probably try to secure clarification quickly.

*Kay Stephenson*
President & CEO
Voice:  850-558-8080
Fax:  850-558-8280
kay.stephenson@datamaxx.com

Will:  In regard to the Chubb Insurance Proposal, I would appreciate written clarification or an explanation of the following from the Chubb Underwriter:

In regard to the Integrated Liability and Indemnity Insurance (beginning on Page 27 of 35) of the Proposal:

Page 31: Intellectual Property Infringement Items A and B:  Does Datamaxx, as the insured, have coverage for any alleged violation of a patent, copyright or trade secret of a third party in which Datamaxx has entered into a Development & License Agreement? Patent Infringement and Trade Secrets are not included. Coverage for Patent Infringement is generally offered in the Lloyds market. See definition of IP below –

| Intellectual Property Infringement | **Intellectual property infringement:** | | |
|---|---|---|---|
| | A. | means infringement upon a person's or organization's: | |
| | | 1. | collective mark, service mark or other trademarked logo, name, slogan, title or other symbol; |
| | | 2. | copyright; |
| | | 3. | Internet domain name or e-mail address; |
| | | 4. | mask work or semiconductor topography right; or |
| | | 5. | trade dress. |
| | B. | does not include any: | |
| | | 1. | violation of a license granted to **an insured.** |
| | | 2. | infringement upon any: |
| | | | a.   software or its source content or material; |
| | | | b.   other computer code or its source content or material; or |
| | | | c.   other expression, method or process designed to control or facilitate any operation or other use of any computer or other automated system. |
| | | 3. | **disclosure of confidential information** or **reputation disparagement.** |

Page 34:  Reward Expenses:  Please provide an example. Cyber-Reward Expenses provides first-party insurance (reimbursement) for the first named insured's reward expenses caused by act that results in unauthorized access or use that first occurs during the policy period. This is the "Wanted" poster that hangs in the police station.

Exclusions Page 4 of 9 of the Proposal:  Datamaxx conducts employee background checks as well as other types of background checks utilizing both Government and Commercial Data Sources.  We provide clear documentation in regard to compliance with FCRA and EEOC.  If there is a claim against Datamaxx for violation of the FCRA and/or EEOC, for any reason whatsoever, (except negligence) is Datamaxx covered and will Chubb provide a defense? I'm not clear on the "exclusion" referred to here...

Intellectual Property Laws or Rights (Except Coverage D) – This entire section appears to exclude infringement of any intellectual property rights.  Datamaxx has numerous Development & License Agreements with third parties and must have proper coverages.  Does this section exclude coverage?

Please refer to your first question above and the definition of IP. It's not excluded.

Intellectual Property Infringement – This section also appears to exclude infringement of intellectual property rights, including patents, copyrights, trademarks, trade secrets, etc.  Datamaxx requires coverage. Please refer to your first question above and the definition of IP. It's not excluded.

Integrated Liability and Indemnity (Errors and Omissions) – Coverage Detail – Claims Made Form – Do the Retroactive Dates 02/21/2012 mean that Datamaxx is covered for all claims retroactive to that date? Chubb will cover claims that result from incidents that occur on or after the retro date.

# CHUBB°

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018  TO  APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

**PLEASE ATTACH THIS ENDORSEMENT TO YOUR POLICY, CERTIFICATE OR BOND.**

**Address Change Endorsement**

Effective October 1, 2016, the address of your insurance company is changing. The address of 15 Mountain View Road, Warren, NJ 07059, wherever it appears, is changed to:

202B Hall's Mill Road
Whitehouse Station, NJ 08889

All other terms and conditions remain unchanged.



*Authorized Representative*

EXHIBIT Ⓑ

**CHUBB**°

# *FLORIDA NOTICE OF RISK MANAGEMENT PROGRAM AVAILABILITY*

Florida regulations require us to develop and make available for use by our clients a Risk Management Guide. We are pleased to present to you Chubb's Risk Management Guide, which includes measures, services and plans we have developed. The scope of your Risk Management Program should include the following:

1.  Safety measures, including, as applicable, the following areas:

    a.  Pollution and environmental hazards;

    b.  Disease hazards;

    c.  Accidental occurrences;

    d.  Fire hazards and fire prevention and detection;

    e.  Liability for acts from the course of business;

    f.  Slip and fall hazards;

    g.  Products injury; and

    h.  Hazards unique to a particular class or category of policyholders.

2.  Training to policyholders in safety management techniques.

3.  Safety management counseling services.

Our guide and services are available upon request to assist in your risk management efforts. If you would like more information call 1-877-248-2202 or email *loss_control_service@chubb.com.*

If you leave a message or send an email inquiry, please include your name, phone number, company name, email address, policy number and a brief description of the loss control services being requested.

**CHUBB**

**Customarq Series**
**Customarq Classic Insurance Program**

## Premium Bill

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018   TO   APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

**Portion of total premium attributable for terrorism and statutory standard fire where applicable is      $ 102.00**

PLEASE SEND PAYMENT TO AGENT OR BROKER.

| Date Payment Due | Premium |
|---|---|
| APRIL 15, 2018 | $ 5,234.85 |
| MAY 15, 2018 | $ 1,717.35 |
| JUNE 15, 2018 | $ 1,717.35 |
| JULY 15, 2018 | $ 1,717.35 |
| AUGUST 15, 2018 | $ 1,717.35 |
| SEPTEMBER 15, 2018 | $ 1,717.35 |
| OCTOBER 15, 2018 | $ 1,717.35 |
| NOVEMBER 15, 2018 | $ 1,717.35 |
| DECEMBER 15, 2018 | $ 1,717.35 |
| JANUARY 15, 2019 | $ 1,717.35 |

## TOTAL                                                                                                        $ 20,691.00

WHEN SENDING PAYMENT, PLEASE INDICATE POLICY NUMBER ON YOUR CHECK.

NOTE:  PLEASE RETURN THIS BILL WITH PAYMENT AND INCLUDE ANY ADDITIONAL CHANGES.

Producer:
HALCYON UNDERWRITERS
2301 LUCIEN WAY STE 360
MAITLAND, FL 32751-0000

# CHUBB®

## *IMPORTANT NOTICE TO POLICYHOLDERS*

**This Important Notice is not your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered. Only the provisions of your policy determine the scope of your insurance protection.**

**THIS IMPORTANT NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. For example, the United States Treasury Department's Office of Foreign Asset Control (OFAC) administers and enforces economic and trade sanctions and places restrictions on transactions with foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation, to impose controls on transactions and freeze foreign assets under United States jurisdiction. (To learn more about OFAC, please refer to the United States Treasury's web site at http://www.treas.gov/ofac.)

To the extent that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable sanction laws, this insurance will not apply.

We have added a condition or section that applies to the entire policy called Compliance With Applicable Trade Sanctions, which stipulates that your insurance policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

**CHUBB**°

## *POLICYHOLDER  NOTICE*

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

**CHUBB°**

# IMPORTANT NOTICE TO POLICYHOLDERS
# TERRORISM RISK INSURANCE ACT

This Important Notice is being provided with your policy to further satisfy the disclosure requirements of the Terrorism Risk Insurance Act.

At the time you received the written offer for this policy, we provided you with an Important Notice to Policyholders indicating that the insurance provided in your policy for losses caused by certain acts of terrorism would be partially reimbursed by the United States of America, pursuant to the formula set forth in the Terrorism Risk Insurance Act. Terrorism is defined as any act certified by the Secretary of Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. In addition, as required by the Terrorism Risk Insurance Act, we:

- indicated that we would make available insurance for such losses in the same manner as we provide insurance for other types of losses;

- specified the premium we would charge, if any, for providing such insurance; and

- except to the extent prohibited by law, gave you the opportunity to reject such insurance and have a terrorism exclusion, included in your policy.

This Policyholder Notice refers back to the Important Notice attached to the quote that was provided to you at the time you received the written offer for this policy, and provides information about your decision and the manner in which your policy has been subsequently modified.

If:

- You rejected terrorism insurance under the Terrorism Risk Insurance Act, your policy includes the appropriate amendatory endorsement(s).

- You did not reject terrorism insurance under the Terrorism Risk Insurance Act, the premium charged for your policy, including that portion applicable to terrorism insurance under the Terrorism Risk Insurance Act, is shown in your policy.

Please carefully review your policy and the Important Notice previously provided to you for further details. Please remember that only the terms of your policy establish the scope of your insurance protection.

**Please note that if your policy is a workers compensation policy, rejection of insurance for terrorism is legally prohibited.**

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States of America under the formula set forth in the Act. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

*continued*

**CHUBB**°

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**CHUBB**

## Integrated Liability and Indemnity Insurance
## Policyholder Reference Guide

### _Introduction_

The purpose of this Guide is to reference some of the major features of the Integrated Liability and Indemnity Insurance that you have purchased. This Guide is not the policy. PLEASE READ YOUR ENTIRE POLICY CAREFULLY to determine your rights, duties and what is and is not covered. Only the provisions of the policy establish the scope of your insurance protection. Keep in mind that the features described below apply only to the extent you purchased them.

### Coverage A – Errors or Omissions Liability

Traditional third party E&O liability insurance for legal or contractually assumed liability for financial injury due to an actual or alleged product or service defect or contract performance failure in Life Sciences, Technology or Advanced Manufactured products and related services.

### Coverage B – Destructive Programming Liability

Companies are granted computer access to supplier, cloud service providers and financial institution systems under contract for the purposes of streamlining business operations.

When a cyber-attack, not caused by a product or service defect or contract performance failure, results in injuries to such third party systems resulting from destructive programming, the company granted access may be legally or contractually obligated for such injuries.

### Coverage C – Cyber Liability

Damages and claimant costs sustained by a third party (other than your customer) for injury caused by unauthorized access or use of software, data or other information in electronic form that results in destructive programming.

### Coverage D – Intellectual Property, Disclosure
### And Reputation Disparagement Liability

Third party liability insurance for enumerated legal or contractual liability exposures:

- specific intellectual property infringements, privacy violations; and libel, slander and other "personal injury" offenses, in any medium; and

- injuries sustained by a person or organization for publication or disclosure of information provided in a written confidentiality agreement pertaining to your business

Damages and claimant costs sustained by a third party (other than your customer) resulting from actual or suspected disclosure of confidential information, intellectual property infringement, or reputation disparagement.

### First Party Additional Coverages

Integrity+ also provides First Party Additional Coverages for Privacy Remediation Expenses incurred in connection with a privacy data breach, including Notification Expenses, Forensic Expenses, Remediation Expenses, and Regulatory Costs. These First Party Additional Coverages, in addition to Cyber-Threat Expenses and Cyber-Reward Expenses, are included in a Basket Limit of Insurance – separate from the limits of insurance purchased for one or more of the liability coverages – and gives companies the flexibility to apportion insurance dollars where they are needed most at the time of loss.

**CHUBB**

Also available are Other First Party Additional Coverages with separate specific limits of insurance for Fines or Penalties, Confidential Information Breach Expenses and Misappropriation of Communication Services.

Insurance for Business Income, Extra Expense and Electronic Data Recovery Costs is also available.

**Industry Specific Coverages**

Integrity+ has three industry-specific extensions that tailor the base liability contract to meet the unique exposures faced by these industries:

- **Advanced Manufacturing:** For today's manufacturers, data is as important as the manufactured product itself. While this can make companies more competitive, it also creates digital exposures. Integrity+ offers advanced manufacturing companies protection as they continue to integrate digital technologies into their manufacturing processes and incorporate such technolgies into their finished products (*"Integrity+ by Chubb for Advanced Manufacturers"*)

- **Technology:** To succeed, technology companies often take risks which may expose them to greater financial peril. Integrity+ offers insurance protection to help preserve technology companies' most important relationships – with customers, vendors, employees, sub-contractors, and shareholders. (*"Integrity+ by Chubb for Technology"*)

- **Life Sciences:** Confidentiality and integrity of patient data are critical in developing products and services that save or sustain lives. Medical device firms are incorporating Bluetooth and other interconnected technologies that enable real-time access to patient information. Integrity+ offers life sciences companies insurance protection that helps address increasingly data-centric discovery and healthcare-delivery processes. (*"Integrity+ by Chubb for Life Sciences"*)

### Pre and Post Breach Cyber Services

Chubb's Cyber team is ready to help you manage and mitigate actual or potential cyber-incidents. Services include online intelligence and pre-event evaluations. You can also receive Cyber Response Coaching, along with a list of dedicated service providers, to help you manage the complex regulatory and legal processes in the event of a privacy data breach.

### Selected Other Features

Claims-made trigger.

Coverage is scalable to fit the needs of individual customers.

The limits of insurance for the First Party Additional Coverages are separate from the Limits of Insurance available for the Liability Coverages described above.

Duty to defend against suits seeking damages for injury to which insurance applies, including defense against claims for injunctive relief to prevent such injury from continuing or resuming (see definition of *"Suit"*).

Insured status for qualified newly acquired or formed organizations (see *"Who Is An Insured – Subsidiary Or Newly Acquired Or Formed Organizations"*).

Worldwide Coverage Territory, except to the extent that economic or trade sanctions or other laws or regulations prohibit us from providing insurance (see *"Coverage Territory"* and Common Policy Conditions *"Compliance with Applicable Trade Sanctions"* and *"Joint Duties In Non-Admitted Jurisdictions"*).



# Customarq Classic Insurance Program

# FOR

# DATAMAXX GROUP INC

Producer:

HALCYON UNDERWRITERS
2301 LUCIEN WAY STE 360
MAITLAND, FL 32751-0000

Chubb Servicing Office:

TAMPA
3000 BAYPORT DRIVE
SUITE 700
TAMPA, FL  33607-8410

**CHUBB®**

*Customarq Series*
*Customarq Classic Insurance Program*

## How To Report A Loss

To report a **Loss**, use the following procedure.

**Loss Notification**

If an **Insured Person** has a **Loss**, please contact us by telephone as soon as possible for further assistance:

Telephone Number: 1-800-252-4670

24 hours a day, 7 days a week

**Fax Number**

You may also fax the loss report during normal business hours to:

Fax Number: 1-800-300-2538

**Mailing Address**

You may mail your loss report to the following address:

Chubb Group Of Insurance Companies
Claim Service Center
600 Independence Parkway
P.O. Box 4700
Chesapeake, Va. 23327-4700

**CHUBB®**  *Customarq Series*
*Customarq Classic Insurance Program*

## Table Of Contents

This Table Of Contents is provided to acquaint you with the overall organization of this policy.

### POLICY ORGANIZATION

Insuring Agreement

Premium Summary

Liability Insurance Section

      Liability Schedule Of Forms & Declarations

      Liability Contracts *

      Liability Endorsements

Common Policy Section

      Common Policy Conditions

      Common Policy Endorsements

---

* Note:      Each contract within a section has its own Table Of Contents to facilitate your use of them.

*last page*

CHUBB°          *IMPORTANT NOTICE TO POLICYHOLDERS*

To obtain information or to make a complaint, you may contact the Company at:


202B Hall's Mill Road
Whitehouse Station, NJ 08889


1-800-36CHUBB
(1-800-362-4822)

# CHUBB®

## *Insuring Agreement*

***Chubb Group of Insurance Companies***
***202B Hall's Mill Road***
***Whitehouse Station, NJ 08889***

*Named Insured and Mailing Address*

DATAMAXX GROUP INC
2001 DRAYTON DRIVE
TALLAHASSEE, FL 32311

*Policy Number*   3590-65-36 TPA

*Effective Date*   APRIL 15, 2018

*Issued by the stock insurance company*
*indicated below, herein called the company.*

**CHUBB CUSTOM**
**INSURANCE COMPANY**

*Producer No.*   0021942-99999

*Producer*   HALCYON UNDERWRITERS
2301 LUCIEN WAY STE 360
MAITLAND, FL 32751-0000

*Incorporated under the laws of*
*NEW JERSEY*

## Company and Policy Period

Insurance is issued by the company in consideration of payment of the required premium.

This policy is issued for the period 12:01 AM standard time at the Named Insured's mailing address shown above:

From:  APRIL 15, 2018          To:  APRIL 15, 2019

Your acceptance of this policy terminates, effective with the inception of this policy, any prior policy of the same number issued to you by us.

This Insuring Agreement together with the Premium Summary, Schedule Of Forms, Declarations, Contracts, Endorsements and Common Policy Conditions comprise this policy.

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

President

Secretary

Authorized  Representative

**CHUBB®**

*Customarq Series*
*Customarq Classic Insurance Program*

## *Premium Summary*

*Named Insured and Mailing Address*

DATAMAXX GROUP INC
2001 DRAYTON DRIVE
TALLAHASSEE, FL 32311

*Chubb Group of Insurance Companies*
*202B Hall's Mill Road*
*Whitehouse Station, NJ 08889*

*Policy Number*  3590-65-36 TPA

*Effective Date*  APRIL 15, 2018

*Issued by the stock insurance company*
*indicated below, herein called the company.*

**CHUBB CUSTOM**
**INSURANCE COMPANY**

*Producer No.*  0021942-99999

*Producer*  HALCYON UNDERWRITERS
2301 LUCIEN WAY STE 360
MAITLAND, FL 32751-0000

*Incorporated under the laws of*
*NEW JERSEY*

## Policy Period

From:   APRIL 15, 2018         To:  APRIL 15, 2019
12:01 A.M. standard time at the Named Insured's mailing address shown above.

## Premium Payment

The First Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

## Premium Audit

Certain classifications within our rates and rules indicate that premiums calculated therefrom can be significantly affected by large increases or decreases in your business results. Based upon our underwriting review of information provided by you, we may at our discretion perform a premium audit. You may also request such an audit.

If an audit is conducted and additional premiums are due, they are payable upon notice to the First Named Insured. If as a result of an audit the premium paid is greater than the earned premium, we will return the excess to the First Named Insured. The First Named Insured must keep records of the information we need to perform the audit and send us copies at such times as we may request.

| Coverage | Rate | Premium |
|---|---|---|
| *LIABILITY INSURANCE SECTION* | | $ 20,691 |

*Issue Date:  APRIL 17, 2018*

*continued*

# CHUBB˚

---

### *Premium Summary*
*(continued)*

### *TOTAL*                                                                    **$ 20,691**

If ATD coverage is provided on this policy, additional certificate and handling fees may be imposed during the policy term.

### Coverage Premium

Additional certificate and handling fees may be imposed as respects to certification of pressure equipment as mandated by State and/or local jurisdictional authorities.

### Payment Plan

This policy premium is being billed as follows. The amounts shown are due and payable as of the dates shown below:

| Date Payment Due | Amount Due |
|---|---|
| APRIL 15, 2018 | $ 5,234.85 |
| MAY 15, 2018 | $ 1,717.35 |
| JUNE 15, 2018 | $ 1,717.35 |
| JULY 15, 2018 | $ 1,717.35 |
| AUGUST 15, 2018 | $ 1,717.35 |
| SEPTEMBER 15, 2018 | $ 1,717.35 |
| OCTOBER 15, 2018 | $ 1,717.35 |
| NOVEMBER 15, 2018 | $ 1,717.35 |
| DECEMBER 15, 2018 | $ 1,717.35 |
| JANUARY 15, 2019 | $ 1,717.35 |

*Liability Insurance Section*

*Declarations*

# CHUBB®

## *Liability Insurance*

### *Schedule of Forms*

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018   TO   APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-0010 | 4-94 | LIABILITY DECLARATIONS | 04/15/18 | 04/17/18 |
| 80-02-0322 | 10-16 | SUPPL DECLARATIONS - ADDITIONAL COVERAGES | 04/15/18 | 04/17/18 |
| 80-02-2324 | 11-06 | NON-ACCUMULATION OF LIMITS OF INSURANCE | 04/15/18 | 04/17/18 |
| 80-02-6016 | 7-15 | INTEGRATED LIABILITY AND INDEMNITY INSURANCE | 04/15/18 | 04/17/18 |
| 80-02-6017 | 7-15 | INTEGRATED LIAB AND INDEM INS EXTEN FOR TECH | 04/15/18 | 04/17/18 |
| 80-02-6403 | 1-15 | CAP ON CERTIFIED TERRORISM LOSSES | 04/15/18 | 04/17/18 |
| 80-02-6595 | 5-06 | DEDUCTIBLES | 04/15/18 | 04/17/18 |
| 80-02-8575 | 10-16 | INTEGRITY+ BY CHUBB AMENDMENTS | 04/15/18 | 04/17/18 |
| 80-10-9212 | 3-17 | INTEGRATED LIAB&INDEM INS POLICYHOLDER REF G | 04/15/18 | 04/17/18 |

*last page*

**CHUBB®**

## *Liability Insurance*

### *Declarations*

*Chubb Group of Insurance Companies*
*202B Hall's Mill Road*
*Whitehouse Station, NJ 08889*

*Named Insured and Mailing Address*

DATAMAXX GROUP INC
2001 DRAYTON DRIVE
TALLAHASSEE, FL 32311

*Policy Number*   3590-65-36 TPA

*Effective Date*   APRIL 15, 2018

*Issued by the stock insurance company*
*indicated below, herein called the company.*

**CHUBB CUSTOM**
**INSURANCE COMPANY**

*Incorporated under the laws of*
*NEW JERSEY*

*Producer No.*   0021942-99999

*Producer*       HALCYON UNDERWRITERS
                 2301 LUCIEN WAY STE 360
                 MAITLAND, FL 32751-0000

### *Policy Period*

From:   APRIL 15, 2018        To:   APRIL 15, 2019
12:01 A.M. standard time at the Named Insured's mailing address shown above.

| *Liability Coverage* | *Limit Of Insurance* | |
|---|---|---|
| *INTEGRATED LIABILITY AND INDEMNITY* | | |
| POLICY AGGREGATE LIMIT | $ 5,000,000 | |
| CLAIMS-MADE | | |
| *COVERAGE A* | | |
| ERRORS OR OMISSIONS AGGREGATE LIMIT | $ 5,000,000 | |
| RETROACTIVE DATE | | FEBRUARY 21, 2012 |
| CONTRACTUALLY ASSUMED PRIVACY REMEDIATION EXPENSES AGGREGATE LIMIT | $ 100,000 | |
| COVERAGE A DEDUCTIBLE - EACH CLAIM | | $ 50,000 |

**CHUBB°**

| Liability Coverage (continued) | Limit Of Insurance |
|---|---|

### COVERAGE B

| | |
|---|---|
| DESTRUCTIVE PROGRAMMING LIABILITY AGGREGATE LIMIT | $ 5,000,000 |
| RETROACTIVE DATE | FEBRUARY 21, 2012 |
| COVERAGE B DEDUCTIBLE - EACH CLAIM | $ 50,000 |

### COVERAGE C

| | |
|---|---|
| CYBER LIABILITY AGGREGATE LIMIT | $ 5,000,000 |
| RETROACTIVE DATE | FEBRUARY 21, 2012 |
| COVERAGE C DEDUCTIBLE - EACH EVENT | $ 50,000 |

### COVERAGE D

| | |
|---|---|
| INTELLECTUAL PROPERTY, DISCLOSURE AND REPUTATION DISPARAGEMENT AGGREGATE LIMIT | $ 5,000,000 |
| RETROACTIVE DATE | FEBRUARY 21, 2012 |
| COVERAGE D DEDUCTIBLE - EACH CLAIM | $ 50,000 |

**Chubb. Insured.℠**

# CHUBB°

## *Liability Insurance*

## *Supplementary Declarations - Additional Coverages*

*Chubb Group of Insurance Companies*
*202B Hall's Mill Road*
*Whitehouse Station, NJ 08889*

*Named Insured and Mailing Address*

DATAMAXX GROUP INC
2001 DRAYTON DRIVE
TALLAHASSEE, FL 32311

*Policy Number*   3590-65-36 TPA

*Effective Date*   APRIL 15, 2018

*Issued by the stock insurance company indicated below, herein called the company.*

**CHUBB CUSTOM INSURANCE COMPANY**

*Incorporated under the laws of NEW JERSEY*

*Producer No.*   0021942-99999

*Producer*   HALCYON UNDERWRITERS
2301 LUCIEN WAY STE 360
MAITLAND, FL 32751-0000

## Policy Period

From:   APRIL 15, 2018          To:   APRIL 15, 2019
12:01 A.M. standard time at the **first named insured**'s mailing address shown above.

| IF YOU NEED URGENT CRISIS MANAGEMENT OR LEGAL ADVICE, PLEASE CONTACT: | **Cyber Incident Response Coach** Hotline at: +1-844-347-7078 |
|---|---|

If an Additional Coverages Aggregate Limit Of Insurance is shown above, such Limit applies to all Additional Coverages shown in the Declarations and is the most we will pay during the policy period regardless of the number of **events** or Additional Coverages. If the Additional Coverages Aggregate Limit Of Insurance is reduced to an amount that is less than any other applicable Limit of Insurance, then the remaining Additional Coverages Aggregate Limit Of Insurance is the most that will be available for any other payment.

Subject to the Additional Coverages Aggregate Limit Of Insurance, the Basket Limit Of Insurance shown below applies to the Additional Coverages shown as included in the Basket Limit Of Insurance and is the most we will pay under such Additional Coverages in each **event**. The Basket Limit Of Insurance applies in excess of the applicable deductible.

At time of loss, the **first named insured** may elect to apportion this Basket Limit Of Insurance to one or any combination of the Additional Coverages. However, unless otherwise indicated, under no circumstance will the aggregate apportionment be permitted to exceed the Basket Limit Of Insurance shown above.

## Liability Insurance
(continued)

Separate specific Limits Of Insurance may be purchased for each of these Additional Coverages. If purchased, these Limits Of Insurance and any applicable deductible will be shown under Specific Limits Of Insurance For Additional Coverages below with the applicable Additional Coverage. When a specific Limit Of Insurance is purchased, then such specific Limit Of Insurance will:

- apply in addition to whatever amount the **first named insured** apportions to that Additional Coverage at time of loss as provided in the previous paragraphs;

- be the most we pay in any **event** for that Additional Coverage, unless otherwise indicated; and

- with respect to **privacy remediation expenses**, be subject to the Privacy Remediation Expenses Aggregate Limit if shown below.

Subject to the Additional Coverages Aggregate Limit Of Insurance, if a Privacy Remedication Expenses Aggregate Limit is shown below, than the most we will pay for all **privacy remediation expenses** is such Privacy Remediation Expenses Aggregate Limit. If the Privacy Remediation Expenses Aggregate Limit is reduced to an amount that is less than the applicable Specific Limit Of Insurance for Privacy Remediation Expenses, then such Privacy Remediation Expenses Aggregate Limit is the most that will be available for any other payment.

Subject to the Additional Coverages Aggregate Limit Of Insurance, if a Specific Aggregate Limit Of Insurance For Additional Coverages is shown below, then the most we will pay during the policy period under such Additional Coverage is the applicable Specific Aggregate Limit Of Insurance For Additional Coverages, regardless of the number of **events**. Such Specific Limits apply in excess of the applicable deductible amount shown below, unless otherwise stated. If two or more of these deductibles apply to the same **event**, only the largest single deductilbe will apply, unless otherwise stated.  No other deductible in this policy applies to these Additional Coverages.

For Cyber Threat Expenses Additional Coverage, the Specific Aggregate Limit Of Insurance applies in excess of the Basket Limit Of Insurance.

For the purposes of the Basket Limit Of Insurance, the deductible is ten percent of such limit and applies in addition to any other applicable deductible. Such deductible does not apply to a "Cyber-Incident Response Coach" approved by us.

## Additional Coverages Included In The Basket Limit Of Insurance

### Basket Limit Of Insurance $500,000

| | |
|---|---|
| Notification Expenses | Remediation Expenses |
| Forensic Expenses | Regulatory Costs |
| Cyber-Threat Expenses | |

## Privacy Remediation Expenses Additional Coverage Limits Of Insurance

| Privacy Remediation Expenses Additional Coverage | Limit Of Insurance | Deductible |
|---|---|---|
| Privacy Remediation Expenses Specific Limits<br>    Notification Expenses | $ 1,000,000 | $ 10,000 |

**CHUBB**°

*Liability Insurance*

*Declarations*

*Effective Date*   APRIL 15, 2018

*Policy Number*   3590-65-36 TPA

---

**Liability Coverage**
(continued)

**Specific Aggregate Limits Of Insurance For Additional Coverages**

| Additional Coverages | Limit Of Insurance | Deductible |
|---|---|---|
| *Cyber-Threat Expenses Aggregate Limit* | $ 1,000,000 | $ 10,000 |

Chubb. Insured.℠

## Liability Insurance

### Integrated Liability And Indemnity Insurance

## Table Of Contents

| Section | Page No. |
|---|---|
| Coverages | 3 |
| Additional Coverages | 6 |
| Investigation, Defense And Settlements | 7 |
| Supplementary Payments | 8 |
| Coverage Territory | 8 |
| Who Is An Insured | 8 |
| Limits Of Insurance | 10 |
| Exclusions | 11 |
| Extended Reporting Periods | 19 |
| Conditions | 21 |
| Definitions | 27 |

LIABILITY CONTRACT

INTEGRATED LIABILITY AND INDEMNITY INSURANCE

*THIS PAGE INTENTIONALLY LEFT BLANK*

**CHUBB°**    *Integrated Liability And Indemnity Insurance*

## Contract

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Additional Coverages, Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; Exclusions; Extended Reporting Periods; Conditions; and Definitions, as well as the Declarations (including any Supplementary Declarations), Common Policy Conditions and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the **first named insured** and other persons or organizations qualifying as a named **insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance. All references in the policy to "spouse" include a party to a civil union or domestic partnership recognized under the applicable law of the jurisdiction having authority.

In addition to the named **insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

UNLESS OTHERWISE SPECIFIED, THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE APPLIES ONLY TO CLAIMS MADE AGAINST THE **INSURED** DURING THE POLICY PERIOD.

UNLESS OTHERWISE SPECIFIED, **CLAIMS ADJUSTMENT EXPENSES**, INCLUDING ATTORNEY FEES AND INVESTIGATION COSTS OR EXPENSES, WILL REDUCE THE LIMITS OF INSURANCE.

### Coverages

These Coverages apply only if a Limit Of Insurance for such Coverages is shown in the Declarations.

### Coverage A – Errors Or Omissions Liability

**THIS COVERAGE APPLIES ON A CLAIMS-MADE BASIS. SEE THE PROVISION TITLED CLAIMS-MADE LIABILITY COVERAGE COMMON PROVISIONS.**

Subject to all of the terms and conditions of this insurance, we will pay damages and **claimant costs** that the **insured** becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an **indemnity contract**, for **financial injury** caused by an **act** that results in an actual or suspected:

A.    defect, deficiency, inadequacy or dangerous condition in:

    1.    **your product;** or

    2.    **your service;** or

B.    failure:

    1.    of **your product** to perform; or

    2.    to perform **your service;**

in accordance with the terms of a contract or agreement.

## *Coverages*
(continued)

*Coverage B – Destructive Programming Liability*

**THIS COVERAGE APPLIES ON A CLAIMS-MADE BASIS. SEE THE PROVISION TITLED CLAIMS-MADE LIABILITY COVERAGE COMMON PROVISIONS.**

Subject to all of the terms and conditions of this insurance, we will pay damages and **claimant costs** that the **insured** becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an **indemnity contract**, for **financial injury** caused by an **act**:

- that is an actual or suspected failure to perform your obligations under a written contract or agreement that authorizes you to use another person's or organization's **information and network technology product**; and

- that results in **destructive programming**.

This coverage does not apply to any damages, loss, cost or expense arising out of any actual or suspected:

A. defect, deficiency, inadequacy or dangerous condition in:

    1. **your product**; or

    2. **your service**; or

B. failure:

    1. of **your product** to perform; or

    2. to perform **your service**;

in accordance with the terms of a contract or agreement.

*Coverage C – Cyber Liability*

**THIS COVERAGE APPLIES ON A CLAIMS-MADE BASIS. SEE THE PROVISION TITLED CLAIMS-MADE LIABILITY COVERAGE COMMON PROVISIONS.**

Subject to all of the terms and conditions of this insurance, we will pay damages and **claimant costs** that the **insured** becomes legally obligated to pay for injury caused by an **act** of **unauthorized access or use**.

This coverage does not apply to any damages, loss, cost or expense arising out of any actual or suspected:

A. defect, deficiency, inadequacy or dangerous condition in:

    1. **your product**; or

    2. **your service**; or

B. failure:

    1. of **your product** to perform; or

    2. to perform **your service**;

in accordance with the terms of a contract or agreement.

Further, this coverage does not apply to damages, loss, cost, or expense any **insured** becomes legally obligated to pay by reason of assumption of liability in a contract or agreement, unless such **insured** would be liable for such damages, loss, cost or expense in the absence of such contract or agreement.

**CHUBB®**                    *Integrated Liability And Indemnity Insurance*

**Coverages**
(continued)

*Coverage D – Intellectual Property, Disclosure And Reputation Disparagement Liability*

**THIS COVERAGE APPLIES ON A CLAIMS-MADE BASIS. SEE THE PROVISION TITLED CLAIMS-MADE LIABILITY COVERAGE COMMON PROVISIONS.**

Subject to all of the terms and conditions of this insurance, we will pay damages and **claimant costs** that the **insured** becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an **indemnity contract**, for injury caused by an **act** that results in actual or suspected:

* **disclosure of confidential information;**

* **intellectual property infringement;** or

* **reputation disparagement**.

This coverage does not apply to any damages, loss, cost or expense arising out of any actual or suspected:

A.   defect, deficiency, inadequacy or dangerous condition in:

    1.   **your product**; or

    2.   **your service**; or

B.   failure:

    1.   of **your product** to perform; or

    2.   to perform **your service**;

    in accordance with the terms of a contract or agreement.

*Claims-Made Liability Coverage Common Provisions*

A.   With respect to all claims-made coverage, this insurance applies only if:

    1.   such **act** was not first committed before the applicable Retroactive Date shown in the Declarations or after the end of the policy period; and

    2.   a claim by a person or organization for damages for such injury (including a claim for injunctive relief to prevent such injury from continuing or resuming) is first made against any **insured**:

        a.   after the beginning of the policy period;

        b.   before the end of the policy period; or

        c.   during any Extended Reporting Period we provide, as described in the Extended Reporting Periods section of this policy.

B.   A claim will be deemed to have been made at the earliest of the following times, when:

    1.   notice of such claim is received and recorded by any **insured** or by us;

    2.   notice of a **circumstance** that correlates with such claim or injury is received and recorded by us; or

    3.   we, at our discretion, make a settlement for such injury.

C.   All claims that correlate with an **act** will be deemed to have been made at the time the first of such claims is deemed to have been made.

## *Coverages*

*Claims-Made Liability Coverage Common Provisions (continued)*

D.   If there is no other insurance available, subparagraph A.2.b. above will not apply to claims made after the end of the policy period of this insurance, if such claims correlate with an **act** and such **act** also correlates with:

  1.   a claim previously made during the policy period of this insurance; or

  2.   a **circumstance** previously notified to us during the policy period of this insurance.

E.   If a notice of a **circumstance** is received and recorded by us not more than 60 days after the end of the policy period, then such notice will be deemed to have been received by us during the policy period.

F.   This coverage does not apply to any damages, loss, cost or expense in connection with any claim that correlates with an **act**, if such **act** also correlates with any claim deemed to have been made before the beginning of the policy period.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

Other than as provided in the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

## *Additional Coverages*

These Additional Coverages apply only if a Limit Of Insurance for such Additional Coverages is shown in the Declarations.

*Privacy Remediation Expenses*

Subject to all of the terms and conditions of this insurance, we will reimburse the **first named insured** for **privacy remediation expenses**, paid or incurred by such **insured**, that result from actual or suspected injury, caused by an **act** that results in a **privacy data breach** that first occurs during the policy period.

If it cannot be determined when the **privacy data breach** first occurred, then such breach will be deemed to have first occurred at the time you first notify us in writing that you are required to incur "Notification Expenses".

This Additional Coverage applies only if:

•   such actual or suspected injury is not excluded under any section of this contract; and

•   expenses are reported to us in writing within one year of the date the **privacy data breach** first occurred.

This Additional Coverage does not apply to **privacy remediation expenses** the **insured** is obligated to incur pursuant to the terms of a written contract or agreement.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

We have no other obligation or liability to pay sums or perform acts or services under this Additional Coverage.

**CHUBB®**                    *Integrated Liability And Indemnity Insurance*

## Additional Coverages
(continued)

| | |
|---|---|
| *Cyber-Threat Expenses* | Subject to all of the terms and conditions of this insurance, we will reimburse the **first named insured** for **cyber-threat expense**: |

- for a **threat** first made directly against such **insured** during the policy period; and

- paid or incurred by the **insured** within 60 days after receipt of such **threat**.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

We have no other obligation or liability to pay sums or perform acts or services under this Additional Coverage.

| | |
|---|---|
| *Cyber-Reward Expenses* | Subject to all of the terms and conditions of this insurance, we will reimburse the **first named insured** for **reward expense**, paid or incurred by such **insured**, that result from actual or suspected injury, caused by an **act** that results in **unauthorized access or use** that first occurs during the policy period. |

If it cannot be determined when the **unauthorized access or use** first occurred, then such **unauthorized access or use** will be deemed to have first occurred at the time you first notify us in writing of the **unauthorized access or use**.

This Additional Coverage applies only if such actual or suspected injury is not excluded under any section of this contract.

To the extent possible, you should make every effort to notify us of your intent to incur any **reward expense** before doing so but in any event you must notify us within 48 hours after incurring any such expense.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

We have no other obligation or liability to pay sums or perform acts or services under this Additional Coverage.

| | |
|---|---|
| ***Investigation, Defense And Settlements*** | Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless. |

If such **suit** is brought, then we will pay reasonable attorney fees and necessary litigation expenses, that are **claim adjustment expenses**, to defend:

- the **insured**; and

- if applicable, the indemnitee of the **insured**, provided the obligation for the cost of the defense of such indemnitee has been assumed by such **insured** in an **indemnity contract**.

We have no duty to defend any person or organization against any **suit** to which this insurance does not apply.

We may, at our discretion, investigate any **act** or injury and make any settlement, regardless of whether any claim has been made or any **suit** has been brought.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

**Supplementary Payments**

Subject to all of the terms and conditions of this insurance, we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

- reasonable expenses (other than **claim adjustment expenses**) incurred by the **insured** at our request to assist us in the investigation of or defense against such claim or **suit**, including actual loss of earnings up to $1,000 a day because of time off from work.

- prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, then we will not pay any prejudgment interest based on that period of time after the offer.

- interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

The most we will pay hereunder is fixed as set forth in the Limits Of Insurance section of this contract.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

**Coverage Territory**

Subject to all of the terms and conditions of this insurance, this insurance applies anywhere.

**Who Is An Insured**

**Sole Proprietorships**

If you are an individual, you and your spouse are **insureds**; but you and your spouse are **insureds** only with respect to the conduct of a business of which you are the sole owner.

If you die:

- persons or organizations having proper temporary custody of your property are **insureds**; but they are **insureds** only with respect to the maintenance or use of such property and only for **acts** until your legal representative has been appointed; and

- your legal representatives are **insureds**; but they are **insureds** only with respect to their duties as your legal representatives. Such legal representatives will assume your rights and duties under this insurance.

**Partnerships Or Joint Ventures**

If you are a partnership (including a limited liability partnership) or a joint venture, you are an **insured**. Your members, your partners and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business.

**Limited Liability Companies**

If you are a limited liability company, you are an **insured**. Your members and their spouses are **insureds**; but they are **insureds** only with respect to the conduct of your business. Your managers are **insureds**; but they are **insureds** only with respect to their duties as your managers.

**Other Organizations**

If you are an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **insured**. Your directors and **officers** are **insureds**; but they are **insureds** only with respect to their duties as your directors or **officers**. Your stockholders and their spouses are **insureds**; but they are **insureds** only with respect to their liability as your stockholders.

**CHUBB®**                    *Integrated Liability And Indemnity Insurance*

## Who Is An Insured
(continued)

| | |
|---|---|
| *Employees* | Your **employees** are **insureds**; but they are **insureds** only for **acts** within the scope of their employment by you or while performing duties related to the conduct of your business. |

*Subsidiary Or Newly Acquired Or Formed Organizations*

If there is no **other insurance** available, the following organizations will qualify as named **insureds**:

- a subsidiary organization of the **first named insured** of which, at the beginning of the policy period and at the time of loss, such **first named insured** controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization; or

- a subsidiary organization of the **first named insured** that such **first named insured** acquires or forms during the policy period, if at the time of loss such **first named insured** controls, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of such organization.

*Controlling Interests*

Persons or organizations that are **controlling interests** of the **first named insured** are **insureds**; but they are **insureds** only with respect to their liability in connection with their control of the **first named insured**.

*Limitations On Who Is An Insured*

A. Except to the extent provided under the Subsidiary Or Newly Acquired Or Formed Organizations provision, no person or organization is an **insured** with respect to the conduct of any person or organization that is not shown as a named **insured** in the Declarations.

B. No person or organization is an **insured** with respect to any damages, loss, cost or expense arising out of any **circumstance**, or any **act**, injury, claim or **suit** (whether or not any of the foregoing is a **circumstance**) reported, in whole or in part at any time, to us or any other insurer under any insurance that is an antecedent to this insurance.

C. No specific person or organization is an **insured** with respect to any damages, loss, cost or expense arising out of any **circumstance** or any **act**, injury, claim or **suit** (whether or not any of the foregoing is a **circumstance**) that is **deemed known** by such person or organization before the later of the:

    1. beginning of the policy period; or

    2. effective date the person or organization first becomes covered under this insurance.

    If any limitation described in paragraph C. above applies to a specific organization, then such limitation also applies to (and therefore this insurance does not apply to) any of such organization's directors or managers (if a limited liability company), members (if a partnership, joint venture or limited liability company), **officers** or partners (if a partnership or joint venture) whether or not any of the foregoing is an **employee**.

D. No person or organization is an **insured** with respect to any damages, loss, cost or expense arising out of any:

    1. ownership, maintenance or use of any assets; or

    2. conduct of any person or organization whose assets, business or organization;

    any named **insured** acquires, either directly or indirectly, for any damages, loss, cost or expense arising out of any **act** or injury happening, in whole or in part, before such acquisition is executed.

## Who Is An Insured

*Limitations On Who Is An Insured (continued)*

E.   Further, this insurance does not apply to any damages, loss, cost or expense arising out of any change, continuation or resumption, at any time, of any **act**, injury, claim, **suit** or **circumstance** described in paragraphs A. through D. above.

## Limits Of Insurance

With respect to all liability coverages under this contract, the Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

- **insureds**;

- claims made or **suits** brought; or

- persons or organizations making claims or bringing **suits**.

With respect to all coverages under this contract, the Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

*Policy Aggregate Limit*

Subject to all other applicable limits set forth in this section of this contract, the Policy Aggregate Limit is the most we will pay for the sum of all damages, **claimant costs**, and other amounts described as reducing the Limits Of Insurance (see the provision titled Payments That Reduce The Limits Of Insurance) under:

- Coverage A – Errors Or Omissions Liability;

- Coverage B – Destructive Programming Liability;

- Coverage C – Cyber Liability; and

- Coverage D – Intellectual Property, Disclosure And Reputation Disparagement Liability.

Any such sum we pay will reduce the amount of this Policy Aggregate Limit and any other applicable limit. The remaining amount of any such limit is the most that will be available for any other payment.

## Limits Of Insurance

*Errors Or Omissions Aggregate Limit*

Subject to all other applicable limits set forth in this section of this contract, the Errors Or Omissions Aggregate Limit is the most we will pay for the sum of all damages, **claimant costs** and other amounts described as reducing the Limits Of Insurance (see the provision titled Payments That Reduce The Limits Of Insurance) under Coverage A.

Any such sum we pay will reduce the amount of this Aggregate Limit and any other applicable limit. The remaining amount of any such limit is the most that will be available for any other payment.

*Destructive Programming Liability Aggregate Limit*

Subject to all other applicable limits set forth in this section of this contract, the Destructive Programming Liability Aggregate Limit is the most we will pay for the sum of all damages, **claimant costs** and other amounts described as reducing the Limits Of Insurance (see the provision titled Payments That Reduce The Limits Of Insurance) under Coverage B.

**⊏HUBB°**                    *Integrated Liability And Indemnity Insurance*

## Limits Of Insurance

*Destructive Programming Liability Aggregate Limit (continued)*

Any such sum we pay will reduce the amount of this Aggregate Limit and any other applicable limit. The remaining amount of any such limit is the most that will be available for any other payment.

*Cyber Liability Aggregate Limit*

Subject to all other applicable limits set forth in this section of this contract, the Cyber Liability Aggregate Limit is the most we will pay for the sum of all damages, **claimant costs** and other amounts described as reducing the Limits Of Insurance (see the provision titled Payments That Reduce The Limits Of Insurance) under Coverage C.

Any such sum we pay will reduce the amount of this Aggregate Limit and any other applicable limit. The remaining amount of any such limit is the most that will be available for any other payment.

*Intellectual Property, Disclosure And Reputation Disparagement Aggregate Limit*

Subject to all other applicable limits set forth in this section of this contract, the Intellectual Property, Disclosure And Reputation Disparagement Aggregate Limit is the most we will pay for the sum of all damages, **claimant costs** and other amounts described as reducing the Limits Of Insurance (see the provision titled Payments That Reduce The Limits Of Insurance) under Coverage D.

Any such sum we pay will reduce the amount of this Aggregate Limit and any other applicable limit. The remaining amount of any such limit is the most that will be available for any other payment.

*Payments That Reduce The Limits Of Insurance*

With respect to all liability coverages, any payments made for:

- damages;
- **claimant costs**; or
- **claim adjustment expenses**;

will reduce the applicable Limits Of Insurance.

Payments we make under the Supplementary Payments section of this contract will not reduce the Limits Of Insurance.

## Exclusions

*Adjustment, Inspection, Recall Or Replacement Expenses*

This insurance does not apply to any damages, loss, cost or expense for any actual or alleged adjustment, disposal, inspection, recall, removal, repair, replacement or withdrawal of:

- **your product** or **your service**;
- any property containing or incorporating **your product** or **your service**;
- any property on which **your service** is or was performed;
- any content, information or material; or

## *Exclusions*

*Adjustment, Inspection,*
*Recall Or Replacement*
*Expenses*
*(continued)*

- any other good, product, property or service;

regardless of whether any such adjustment, disposal, inspection, recall, removal, repair, replacement or withdrawal is performed by any **insured** or others.

*Antitrust Or Restraint Of*
*Trade*

This insurance does not apply to any damages, loss, cost or expense arising out of any actual, alleged or threatened:

A.   anticompetition, interference with economic relations (including interference with contractual relations or with prospective advantage), monopolization, predatory pricing, price discrimination, price-fixing, restraint of trade, unfair competition or unfair business or trade practice, or similar practices.

B.   violation of any judicial, regulatory or statutory law:

    1.   relating to any practice described in subparagraph A. above; or

    2.   designed, in whole or in part, to:

        a.   ensure or maintain competition within a marketplace; or

        b.   prevent or prohibit any practice that adversely affects a marketplace.

C.   violation of any judicial, regulatory or statutory law designed, in whole or in part, to ensure or maintain marketplace integrity against practices of persons or organizations that participate or conspire to participate in racketeering.

*Asbestos, Silica Or*
*Similar Compounds*
*Including Mixed Dust*

A.   This insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **asbestos, silica** or **mixed dust**.

B.   This insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of any:

    1.   demand, order, request or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **asbestos, silica** or **mixed dust**.

    2.   claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **asbestos, silica or mixed dust**.

*Benefit Plans Or*
*Workers' Compensation*
*Laws Or Similar Laws*

This insurance does not apply to any damages, loss, cost or expense arising out of any:

A.   1.   actual or alleged violation of any law; or

    2.   duty or obligation (whether contractual or otherwise) of any **insured**;

in connection with any **benefit plan**, including any administration, design, disclosure, enrollment, establishment, funding, maintenance, management, marketing or similar activity relating to any such plan.

B.   1.   actual or alleged violation of; or

    2.   duty or obligation (whether contractual or otherwise) of any **insured** under;

**CHUBB®**                    *Integrated Liability And Indemnity Insurance*

## Exclusions

**Benefit Plans Or Workers' Compensation Laws Or Similar Laws (continued)**

any disability benefits, unemployment compensation or workers' compensation law.

C.   1.   actual or alleged violation of; or

2.   duty or obligation (whether contractual or otherwise) of any **insured** under;

any law similar to any of the foregoing.

This exclusion applies regardless of whether any **insured** is acting:

- as a fiduciary or in any other capacity; or
- on behalf of any **employee** or any other person or organization.

**Bodily Injury**

A.   This insurance does not apply to any damages, loss, cost or expense for any actual or alleged **bodily injury**.

B.   Paragraph A. above also applies to any actual or alleged:

1.   damages, loss, cost or expense for the care or loss of services of any person that actually or allegedly sustained any such injury (incurred by that person or by any other person or organization).

2.   obligation to share any damages, loss, cost or expense with or to repay any person or organization that must pay any damages, loss, cost or expense for any of the foregoing.

**Ceasing Support**

This insurance does not apply to any damages, loss, cost or expense arising out of any actual, alleged or threatened decision by any **insured**:

- not to provide or support; or
- to cease to provide or support;

in whole or in part at any time, any content, good, information, material, product, property or service that any **insured** is obligated to provide or support.

**Co-Development Or Licensing Of Material**

This insurance does not apply to any damages, loss, cost or expense arising out of any injury actually or allegedly sustained by any:

A.   person or organization that creates, designs, develops, licenses or provides any content, good, information, material, product, property or service (including any intellectual property) to, for or with any **insured**.

B.   agent, assignee, custodian of property, heir, representative or successor of any such person or organization.

Subparagraph A. above does not apply to a person or organization with whom the **insured** has a written contract or agreement in connection with such content, good, information, material, product, property or service.

## *Exclusions*
*(continued)*

| | |
|---|---|
| *Communication Services* | This insurance does not apply to any damages, loss, cost or expense arising out of any actual or alleged: |

- theft of **communications services**; or
- unauthorized access to or unauthorized use of such services.

*Continuing Acts*

This insurance does not apply to any damages, loss, cost or expense arising out of any continuation or resumption of any **act** after the later of the end of the policy period of:

A.   this insurance; or

B.   a subsequent, continuous renewal or replacement of this insurance:

    1.   that is issued to the **first named insured** by us or by an affiliate of ours; and

    2.   which would otherwise apply to such **act**.

*Cost Of Contract Or Restitution*

This insurance does not apply to any:

A.   1.   amount that constitutes disgorgement; or

    2.   charges, fees or consideration owed or paid to any **insured** in connection with **your product** or **your service**, including any restitution or return of any such amounts;

B.   cost or expense to perform any obligation assumed by or on behalf of any **insured**; or

C.   damages, loss, cost or expense incurred, or agreed to, by or on behalf of any **insured**.

Subparagraph B. above does not apply to attorney fees or litigation expenses that are **claim adjustment expenses** to defend the indemnitee of the **insured**, provided the obligation for the cost of the defense of such indemnitee has been assumed by such **insured** in an **indemnity contract**.

Subparagraph C. above does not apply to such damages, loss, cost or expense agreed to in an **agreed settlement**.

*Crime, Dishonesty, Fraud Or Malice*

This insurance does not apply to any damages, loss, cost or expense arising out of any criminal, dishonest, fraudulent or malicious conduct that:

- was committed by the **insured**;
- was committed with the consent or knowledge of the **insured**; or
- would have been known from the standpoint of a reasonable person in the circumstances of the **insured**.

*Damage To Tangible Property*

This insurance does not apply to any damages, loss, cost or expense for any actual or alleged:

- physical injury to tangible property; or
- other injury because tangible property cannot be used or is less useful due to physical injury to it or to any other tangible property.

Tangible property does not include software, data or other information that is in electronic form.

**CHUBB®**   ***Integrated Liability And Indemnity Insurance***

## *Exclusions*

*Damage To Tangible Property (continued)*

This exclusion also applies to any actual or alleged obligation to share any damages, loss, cost or expense with or to repay any person or organization that must pay any damages, loss, cost or expense for any of the foregoing.

*Decompilation Or Reverse Engineering Of Computer Code, Methods Or Processes*

A.  This insurance does not apply to any damages, loss, cost or expense arising out of or in any way related to any actual, alleged or threatened decompilation or reverse engineering of any other person's or organization's:

   1.  software or its source content or material;

   2.  other computer code or its source content or material; or

   3.  method or process designed to control or facilitate any operation or other use of any computer or other automated system;

   that:

   •  was committed by the **insured;**

   •  was committed with the consent or knowledge of the **insured**; or

   •  would have been expected from the standpoint of a reasonable person in the circumstances of the **insured;**

B.  Further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation of or a reference to any decompilation or reverse engineering described in subparagraph A. above, even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**.

   This exclusion does not apply to the extent such decompilation or reverse engineering was authorized in writing by the owner of such code, method or process.

*Employment – Related Practices (Except Privacy Remediation Expenses)*

A.  This insurance does not apply to any damages, loss, cost or expense arising out of any injury actually or allegedly sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, in whole or in part at any time, including any:

   1.  arrest, detention or imprisonment;

   2.  breach of any express or implied covenant;

   3.  coercion, criticism, humiliation, prosecution or retaliation;

   4.  defamation or disparagement;

   5.  demotion, discipline, evaluation or reassignment;

   6.  discrimination, harassment or segregation;

   7.  a.  eviction; or
       b.  invasionor other violation of any right of occupancy;

   8.  failure or refusal to advance, compensate, employ or promote;

   9.  invasion or other violation of any right of privacy or publicity;

## Exclusions

**Employment – Related Practices (Except Privacy Remediation Expenses) (continued)**

    10.   termination of employment; or

    11.   other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time.

B.    This insurance does not apply to any damages, loss, cost or expense arising out of any injury actually or allegedly sustained at any time by any brother, child, parent, sister or spouse of any person at whom any act, omission, policy, practice or representation is directed (as described in paragraph A. above), as a consequence of any of the foregoing.

C.    Paragraphs A. and B. above:

    1.   apply regardless of the capacity in which the **insured** may be liable; and

    2.   also apply to any obligation to share any damages, loss, cost or expense with or to repay any person or organization that must pay any damages, loss, cost or expense because of any of the foregoing.

D.    This exclusion does not apply to Privacy Remediation Expenses Additional Coverage.

**Enhancement, Maintenance Or Prevention Expenses (Except Privacy Remediation Expenses)**

This insurance does not apply to any cost or expense incurred by any **insured** or others for any:

- enhancement or maintenance of any property; or
- prevention of any injury to any person, property or organization.

This exclusion does not apply to Privacy Remediation Expenses Additional Coverage.

**Equitable Relief (Except Privacy Remediation Expenses)**

This insurance does not apply to any cost or expense to comply with any injunction or other equitable relief.

This exclusion does not apply to Privacy Remediation Expenses Additional Coverage.

**Expected Or Intended Injury**

This insurance does not apply to any damages, loss, cost or expense arising out of any act or failure to act:

- intended by the **insured**; or
- that would be expected from the standpoint of a reasonable person in the circumstances of the **insured**;

to cause injury, even if the actual injury is of a different degree or type than expected or intended.

**Governmental Claims Or Proceedings**

This insurance does not apply to any damages, loss, cost or expense in any way related to any claim made or proceeding brought by or on behalf of any governmental authority.

This exclusion does not apply to:

- the liability for damages for injury sustained by a governmental authority (other than the **insured**) resulting from its ownership, maintenance or use of **your product** or **your service**.
- Privacy Remediation Expenses Additional Coverage.

**CHUBB°**    *Integrated Liability And Indemnity Insurance*

## Exclusions
*(continued)*

*Information Laws, Including Unauthorized Or Unsolicited Communications*

This insurance does not apply to any damages, loss, cost or expense arising out of any actual, alleged or threatened violation of:

- the United States of America CAN-SPAM Act of 2003 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction.

- the United States of America Telephone Consumer Protection Act (TCPA) of 1991 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction.

- the United States of America Fair Credit Reporting Act (FCRA) (or any law amendatory thereof including the Fair and Accurate Credit Transactions Act (FACTA)) or any similar regulatory or statutory law in any other jurisdiction.

- any other regulatory or statutory law in any jurisdiction that addresses, limits or prohibits the collecting, communicating, disposal, dissemination, distribution, monitoring, printing, publication, recording, sending or transmitting of content, information or material.

*Insureds Or Affiliates (Except Privacy Remediation Expenses)*

This insurance does not apply to any damages, loss, cost or expense arising out of any injury actually or allegedly sustained by any:

- **insured**.

- **controlling interests** of any **insured**.

- subsidiary organization of any **insured**.

- manager, member or partner of any limited liability company, partnership or joint venture in which any **insured** has any interest.

- director, **officer**, stockholder or **employee** of any person or organization described above.

- agent, assignee, custodian of property, heir, representative or successor of any person or organization described above.

- spouse of any person described above.

This exclusion does not apply to Privacy Remediation Expenses Additional Coverage.

*Intellectual Property Laws Or Rights (Except Coverage D)*

A.   This insurance does not apply to any damages, loss, cost or expense arising out of, giving rise to or in any way related to any actual, alleged or threatened:

1.   assertion; or

2.   infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**.

Further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation of or a reference to an infringement or violation of any **intellectual property law or right**, even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**.

## *Exclusions*

| | |
|---|---|
| *Intellectual Property Laws Or Rights (Except Coverage D) (continued)* | B.   With respect to Coverage D only, this exclusion applies: |

      1.   unless the only infringement or violation of an **intellectual property law or right** is one that is described in the definition of **intellectual property infringement**; and

      2.   a Limit Of Insurance applicable to **intellectual property infringement** is shown in the Declarations.

*Maintenance Of Contracts Or Licenses*

This insurance does not apply to any damages, loss, cost or expense arising out of any actual, alleged or threatened decision by any **insured**:

- not to effect, maintain, procure or secure; or

- to cancel, let lapse, modify, not renew, revoke, suspend or otherwise impair;

in whole or in part at any time, any bond, insurance, lease, license, order, permit or other contract or agreement that any **insured** is obligated to effect, maintain, procure or secure.

*Money*

This insurance does not apply to any damages, loss, cost or expense incurred by any **insured** or others arising out of the actual or alleged disappearance, theft or other loss of **money**:

- owned by any **insured**;

- for which any **insured** is legally obligated; or

- held by any **insured** in any capacity, regardless of whether such **insured** is legally obligated.

*Nuclear Energy*

This insurance does not apply to any damages, loss, cost or expense:

A.   with respect to which any **insured** under this policy also has status as an insured (or is entitled to indemnity) under a nuclear energy liability policy issued by:

      1.   American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, Nuclear Energy Liability Insurance Association, Nuclear Insurance Association of Canada or any of their antecedents or successors; or

      2.   any similar insurer anywhere in the world;

      or would have had status as an insured or would have been entitled to indemnity under any such policy but for its termination upon exhaustion of its limit of insurance.

B.   arising out of the actual, alleged or threatened contaminative, explosive, pathogenic, radioactive, toxic or other hazardous properties of **nuclear or radioactive material**.

C.   arising out of any:

      1.   demand, order, request or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **nuclear or radioactive material**; or

      2.   claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **nuclear or radioactive material**.

**CHUBB°**                    *Integrated Liability And Indemnity Insurance*

## Exclusions
*(continued)*

| | | |
|---|---|---|

*Pollution*

A.   This insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**.

B.   This insurance does not apply to any damages, loss, cost or expense arising out of any:

    1.   demand, order, request or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    2.   claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

C.   Paragraphs A. and B. above apply regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.

*Publications With Knowledge Of Falsity*

This insurance does not apply to any damages, loss, cost or expense arising out of any electronic, oral, written or other publication of content, information or material by or with the consent of the **insured**:

•    with knowledge of its falsity; or

•    if, from the standpoint of a reasonable person in the circumstances of such **insured**, such content, information or material would have been known to be false.

This exclusion does not apply to Coverage B.

*Securities Laws*

This insurance does not apply to any damages, loss, cost or expense arising out of any actual or alleged violation of any **securities law**.

*Wrong Descriptions Of Prices*

This insurance does not apply to any damages, loss, cost or expense arising out of any wrong description of the price of any good, product or service.

### Extended Reporting Periods

THE PROVISIONS SET FORTH IN THE EXTENDED REPORTING PERIODS SECTION OF THIS CONTRACT APPLY ONLY TO CLAIMS-MADE COVERAGES.

*When Extended Reporting Periods Apply*

We agree to provide:

•    a Basic Extended Reporting Period; and

•    a Supplemental Extended Reporting Period, provided the **first named insured** purchases it from us;

but only if:

A.   this insurance (and all its coverages) is canceled or not renewed (for reasons other than non-payment of premium); or

## *Extended Reporting Periods*

**When Extended Reporting Periods Apply (continued)**

B.  we renew or replace this insurance (and all its coverages) with other insurance that:

    1.  has a retroactive date applicable to the **first named insured** later than the applicable Retroactive Date shown in the Declarations of this insurance; or

    2.  does not apply on a claims-made basis.

**How Extended Reporting Periods Apply**

Extended Reporting Periods:

A.  apply only to claims that are actually first made against any **insured** during such periods that result from injury to which this insurance applies.

B.  do not:

    1.  extend the policy period or change the scope of coverage.

    2.  increase or reinstate the Limits Of Insurance.

    3.  apply to any damages, loss, cost or expense in connection with any claim covered under any **other insurance** (including any subsequent insurance you purchase), or that would be covered, but for exhaustion of the amount of insurance otherwise applicable to such claim.

C.  may not be canceled once in effect.

Claims that are actually first made against any **insured** during an Extended Reporting Period will be deemed to have been made during the policy period.

**Basic Extended Reporting Period**

Only one Basic Extended Reporting Period will be available, and it will be shared by all qualifying interests under this policy. No separate Basic Extended Reporting Period will be provided to any specific person or organization.

The Basic Extended Reporting Period begins with the end of the policy period and lasts no longer than:

A.  five years with respect to claims, resulting from **circumstances** reported to us not later than 60 days after the end of the policy period.

B.  60 days with respect to claims, resulting from **circumstances** not reported to us in accordance with subparagraph A. above.

Subject to the foregoing, notification must be in accordance with the condition titled Duties In The Event Of Acts, Circumstances, Claims Or Suits.

**Supplemental Extended Reporting Period**

A Supplemental Extended Reporting Period is available, but only by an endorsement, for an additional premium.

No person or organization, other than the **first named insured**, has the right to purchase a Supplemental Extended Reporting Period.

Only one Supplemental Extended Reporting Period will be available, and it will be shared by all qualifying interests under this policy. No separate Supplemental Extended Reporting Period will be provided to any specific person or organization.

If purchased, the Supplemental Extended Reporting Period begins with the end of the Basic Extended Reporting Period and lasts up to an unlimited time.

**CHUBB®**     *Integrated Liability And Indemnity Insurance*

## Extended Reporting Periods

**Supplemental Extended Reporting Period (continued)**

The **first named insured** must give us a written request to purchase the Supplemental Extended Reporting Period within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless we receive the additional premium on or prior to the due date.

We will determine the additional premium for the endorsement for the Supplemental Extended Reporting Period in accordance with our rates and rules. The additional premium will not exceed 200 percent of the annualized premium of this policy. The additional premium will be deemed fully earned at the inception of the Supplemental Extended Reporting Period.

The endorsement for the Supplemental Extended Reporting Period will set forth any special terms and conditions, not inconsistent with this section, applicable to the Supplemental Extended Reporting Period.

## Conditions

**Arbitration**

We are entitled to exercise all of the **insured**'s rights in the choice of arbitrators and in the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**.

**Bankruptcy**

Bankruptcy or insolvency of the **insured** or of the **insured**'s estate will not relieve us of our obligations under this insurance.

**Currency**

Amounts under this insurance are expressed and payable in United States of America currency.

However, at our discretion, we may make payments in another currency.

In the event of any payment involving another currency, conversion into or from such currency will be computed as follows:

- with respect to payments for judgments or settlements, amounts will be computed at a free rate of exchange as soon as practicable following the date of entry of final judgment or the date of settlement.

- with respect to payments other than payments for judgments or settlements, amounts will be computed at a free rate of exchange as soon as practicable following the date of our agreement to release payment.

In no event will any conversion into or from another currency result in any increase in the Limits Of Insurance as expressed in United States of America currency.

**Disclosures Or Representations**

We have issued this insurance:

- based upon any representations made to us by you; and

- in reliance upon any such representations.

Unintentional failure of an **employee** of the **insured** to disclose a hazard or other material information will not violate this condition, unless an **officer** (whether or not an **employee**) of any **insured** knows about such hazard or other material information.

## *Conditions*
(continued)

*Duties In The Event Of Acts, Circumstances, Claims Or Suits*

A. You must see to it that we and any other insurers are notified as soon as practicable (but in no event later than the time frames set forth in the applicable coverage) of any:

    1. **circumstance** or **act**, injury, claim or **suit** (whether or not any of the foregoing is a **circumstance**) that may reasonably be expected by you to result in a claim; or

    2. claim if the claim may involve us or such other insurers.

To the extent possible, notice should include:

- how, when and where the foregoing happened;
- the names and addresses of any injured persons and organizations and witnesses; and
- the nature and location of such injury.

Notice of an **act**, **circumstance** or injury is not notice of a claim.

B. If a claim is made or **suit** is brought against any **insured**, then you must:

    1. immediately record the specifics of the claim or **suit** and the date received;

    2. notify us and other insurers as soon as practicable; and

    3. see to it that we receive written notice of the claim or **suit** as soon as practicable.

C. You and any other involved **insured** must:

    1. immediately see to it that we receive copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

    2. authorize us to obtain records and other information;

    3. cooperate with us and other insurers in the:

        a. investigation or settlement of the claim; or

        b. defense against the **suit**; and

    4. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **insured** because of loss to which this insurance may also apply.

D. No **insured** will, except at that **insured's** own cost, make any payment, assume any obligation or incur any expense without our consent. This does not apply to the Privacy Remediation Expenses, Cyber Threat Expenses and Cyber Reward Expenses Additional Coverages.

E. Any notice to us under this condition must be in writing and addressed to our Claim Department.

*First Named Insured Special Provisions*

In addition to the obligations of the **first named insured** as set forth in the Common Policy Conditions or any other provision of this policy, the following provisions apply.

A. The **first named insured** is primarily responsible:

    1. to act on behalf of any person or organization (other than us) having rights or duties under this policy.

    2. for all communications between any such person or organization and us.

**⊏⊢⊔⊟⊟°**                    *Integrated Liability And Indemnity Insurance*

## Conditions

*First Named Insured Special Provisions (continued)*

B.   Such communications include those in connection with:

1.   any application for this insurance;

2.   any addition to, deletion of or other change in the terms or condition of this insurance;

3.   the provisions of the condition titled Duties In The Event of Acts, Circumstances, Claims Or Suits or similar provisions of this contract; or

4.   the Extended Reporting Periods section of this contract.

C.   Our communications under this policy will be principally through the **first named insured**. The inclusion of any other **insured** or other interest under this insurance will not obligate us to provide any notice or other specific information to any such interest.

D.   We have no obligation to apportion or provide any claim, premium or other information separately among or to any specific **insured** or other interest under this insurance.

*Joint Duties In Non-Admitted Jurisdictions*

This insurance is not a substitute for any compulsory admitted insurance (insurance that is required to be in force to satisfy the legal requirements of a given jurisdiction). You alone have the duty to arrange and maintain compulsory admitted insurance. If you do not arrange and maintain compulsory admitted insurance, then we will only be liable to the same extent as if you had arranged and maintained such compulsory admitted insurance.

With respect to any claim, **suit** or other loss circumstance that arises in any jurisdiction where we are:

- not licensed or permitted to do business; or

- prevented by law or otherwise from investigating, defending against or settling a claim, **suit** or other loss circumstance;

the following provisions apply.

We have no duty to defend against or settle any claim or **suit** against any person or organization or investigate any loss circumstance.

You and any other **insured** must:

- see to it that any investigation of, defense against or settlement of any claim, **suit** or other loss circumstance is conducted as we deem reasonable.

- take all steps, as appropriate, to avoid any default in any claim, **suit** or proceeding.

- obtain our approval for any payment.

- effect payments to others with our approval.

We may, at our discretion:

- participate in any investigation of, defense against or settlement of any claim, **suit** or other loss circumstance.

- adjust and coordinate any claim, **suit** or other loss circumstance with the **first named insured**. However, the **first named insured** is ultimately responsible for the proper apportionment of any payment made under this insurance.

## *Conditions*

| | |
|---|---|
| *Joint Duties In Non-Admitted Jurisdictions* (continued) | We will pay or reimburse amounts in connection with the foregoing: |

- that are incurred with our consent:
- in a jurisdiction that is mutually acceptable; and
- until the applicable Limits Of Insurance have been used up.

*Legal Action Against Us*

No person or organization has a right under this insurance to:

- join us as a party or otherwise bring us into a **suit** seeking damages from an **insured**; or
- sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after an actual

- trial in a civil proceeding; or
- arbitration or other alternative dispute resolution proceeding;

but we will not be liable for any damages, loss, cost or expense not payable under the terms and conditions of this insurance or that are in excess of the applicable Limits Of Insurance.

*Other Insurance*

If valid and collectible **other insurance** is available to any **insured** or other qualifying interest (under this insurance) for any damages, loss, cost or expense we would otherwise cover under this insurance, then our obligations are limited as follows.

This insurance is excess over any **other insurance**, whether primary, excess, contingent or on any other basis:

- provided to any **insured** or other qualifying interest (under this insurance) by any person or organization working under contract or agreement with any **insured** or other qualifying interest (under this insurance).
- under which any **insured** or other qualifying interest (under this insurance) is included as an insured or other qualifying interest under such **other insurance**.
- that applies to any damages, loss, cost or expense regardless of whether such insurance is provided to any **insured** or other person or organization.
- including any applicable antecedent, renewal or replacement of any of the foregoing.

We will have no duty to defend the **insured** against any **suit** if any provider of any **other insurance** has a duty to defend such **insured** against such **suit**. If no other insurer defends, then we will undertake to do so, but we will be entitled to the **insured**'s rights against all those other insurers.

We will pay only our share of the amount of loss, if any, that exceeds the sum of the total amount that all **other insurance** would pay for any damages, loss, cost or expense in the absence of this insurance.

**CHUBB**°     *Integrated Liability And Indemnity Insurance*

## Conditions

| | |
|---|---|
| *Other Insurance* *(continued)* | *Non – Accumulation of Limits Of Insurance* |

If this insurance contract is one of several insurance contracts issued by us or other member companies of the Chubb Group of Insurance Companies to you, or your subsidiary organizations, then any damages, loss, cost or expense that could be covered under two or more contracts will be subject to the limits of insurance under the contract with the highest applicable limit of insurance or, if the limits are the same, under the limits of insurance of one contract.

*Premium Audit*

We will compute all premiums for this insurance in accordance with our rules and rates.

We may audit any **insured**'s books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

*Separation Of Insureds*

Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the **first named insured**, this insurance applies:

- as if each named **insured** were the only named **insured**; and

- separately to each **insured** against whom claim is made or **suit** is brought.

*Transfer Or Waiver Of Rights Of Recovery Against Others*

We will waive the right of recovery we would otherwise have had against another person or organization for loss provided the **insured** has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

To the extent that the **insured**'s rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring suit or transfer those rights to us and help us enforce them.

*Your Right To Claim Information*

We will provide the **first named insured** the following information relating to this and any preceding insurance we have issued to you during the previous three years:

- a list or other record of each **act** not previously reported to any other insurer, of which we were notified in accordance with the provisions of the condition titled Duties In The Event Of Acts, Circumstances, Claims Or Suits. We will include the date and brief description of the **act** if that information was in the notice we received.

- a summary by policy year of payments made and amounts reserved, stated separately, under any applicable aggregate limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values. You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the **first named insured** within 60 days after the end of the policy period. In such case, we will provide this information within 45 days of receipt of the request.

We compile claim information for our own business purposes and exercise reasonable care in doing so. In providing this information to the **first named insured**, we make no representations or warranties with respect to it. Cancellation or nonrenewal of this insurance will be effective even if we inadvertently provide inaccurate information.

*THIS PAGE INTENTIONALLY LEFT BLANK*

**CHUBB°**               *Integrated Liability And Indemnity Insurance*

## Definitions

| | |
|---|---|
| *Act* | **Act:** |
| | • means an act, error or omission. |
| | • includes all correlated acts, errors or omissions and all series of continuous or repeated acts, errors or omissions. |
| *Agreed Settlement* | **Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative. |
| *Asbestos* | **Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product, compound or other material or **waste**. |
| *Benefit Plan* | **Benefit plan** means any: |
| | • accident, automobile, dental, disability, healthcare, homeowners, life, unemployment or workers' compensation; |
| | • deferred compensation, financial planning, investment subscription, pension, profit sharing, retirement, severance or stock ownership; or |
| | • expense reimbursement, savings, training, travel or vacation; |
| | account, insurance, payment, plan or program, or any similar benefit. |
| *Bodily Injury* | **Bodily injury** means physical: |
| | • injury; |
| | • sickness; or |
| | • disease; |
| | sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. |
| *Circumstance* | **Circumstance:** |
| | • means facts as established by direct evidence that would reasonably be expected to result in any claim to which this insurance would otherwise apply. |
| | • includes **acts**, injury, claims or **suits** supported by such evidence. |
| *Claim Adjustment Expenses* | **Claim adjustment expenses:** |
| | A. means: |
| | 1. reasonable attorney and paralegal fees and salaries (including those of attorneys and paralegals that are our **employees**). |
| | 2. reasonable expenses relating to a **suit** including the cost of court reporters, depositions, expert witnesses, research reports and transcripts. |

## Definitions

**Claim Adjustment Expenses** *(continued)*

3. the cost of:

    a.   bail bonds; or

    b.   bonds required to:

        i.   appeal judgments; or

        ii.   release attachments;

- but only for:
- bonds in connection with a **suit**; and
- bond amounts within the available Limits Of Insurance.

We do not have to furnish these bonds.

4. court costs taxed against the **insured** in a **suit**.

5. the reasonable cost and expense of any investigation that we undertake at our discretion after receiving notice from you or any other person or organization, regardless of whether such notice constitutes a claim or **suit**.

6. other reasonable expenses that we allocate to a specific claim or **suit**.

B. does not include:

1. any cost or expense to comply with any injunction or other equitable relief.

2. any **claimant costs**.

3. any fine or other penalty.

4. the salaries or expenses of our **employees** (other than those described in subparagraph A.1. above) or any salaries or expenses of any **insured**'s **employees** or directors, managers (if a limited liability company), members (if a partnership, joint venture or limited liability company), **officers** or partners (if a partnership or joint venture) or workers (whether or not any of the foregoing is an **employee**).

**Claimant Costs**

**Claimant costs** means attorney fees and litigation expenses incurred by a claimant relating to a **suit**.

**Communication Services**

**Communication services** means:

- telephonic or other mechanical; or
- Internet, satellite or other electronic,

services used to store, transmit or communicate information.

**Controlling Interests**

**Controlling interests** means persons or organizations having control of, either directly or indirectly, more than 50 percent of the interests entitled to vote generally in the election of the governing body of another organization.

**CHUBB°**                    *Integrated Liability And Indemnity Insurance*

## Definitions
(continued)

*Cyber-Threat Expense*

**Cyber-threat expense** means:

A.   property or other consideration surrendered to remove or mitigate a **threat**; or

B.   reasonable and necessary expenses incurred for:

    1.   the services of an independent negotiator or consultant; and

    2.   travel and accommodation expenses;

solely and directly incurred as a result of a **threat**.

*Deemed Known*

**Deemed known** means:

• with respect to a specific person, known by or that would have been known from the standpoint of a reasonable person in the circumstances of such person; or

• with respect to a specific organization, known by or that would have been known from the standpoint of a reasonable person in the circumstances of any of such organization's directors or managers (if a limited liability company), members (if a partnership, joint venture or limited liability company), **officers** or partners (if a partnership or joint venture) whether or not any of the foregoing is an **employee**.

A **circumstance** or injury, claim or **suit** (whether or not any of the foregoing is a **circumstance**) will be **deemed known** at the earliest time when any such person described above:

A.   reports the **circumstance**, injury, claim or **suit**, in whole or in part, to us or any other insurer;

B.   receives a claim or **suit** in connection with the **circumstance** or injury; or

C.   becomes aware or would have been aware:

    1.   that the **circumstance** or injury, in whole or in part, has happened or has begun; or

    2.   of any actual, alleged or threatened injury, claim or **suit** in connection with the **circumstance**.

*Destructive Programming*

**Destructive programming** means programming that:

• copies;

• corrupts;

• deletes;

• destroys;

• discloses;

• distorts; or

• manipulates;

software, data or other information or slows down an **information and network technology product**.

### Definitions
(continued)

| | |
|---|---|
| *Disclosure Of Confidential Information* | **Disclosure of confidential information:** |

- means electronic, oral, written or other publication or other disclosure of confidential or proprietary content, information or material in violation of the expressed confidentiality or non-disclosure terms of a written contract or agreement pertaining to your business.
- does not include any **intellectual property infringement** or **reputation disparagement**.

*Employee*   **Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

*Event*   **Event:**

A. means one:

   1. **privacy data breach** under Privacy Remediation Expenses Additional Coverage;

   2. **threat** under Cyber-Threat Expenses Additional Coverage; or

   3. **unauthorized access or use** under Cyber-Reward Expenses Additional Coverage.

B. includes any other:

   1. **privacy data breach** under Privacy Remediation Expenses Additional Coverage

   2. **threat** under Cyber-Threat Expenses Additional Coverage; or

   3. **unauthorized access or use** under Cyber-Reward Expenses Additional Coverage;

that:

- contributes concurrently; or
- in any sequence to;

such **privacy data breach, threat** or **unauthorized access or use**.

*First Named Insured*   **First named insured** means the person or organization first named in the Declarations as a Named Insured.

*Financial Injury*   **Financial injury** means economic injury sustained by a person or organization.

*Indemnity Contract*   **Indemnity contract:**

A. means a contract or agreement pertaining to your business in which you assume the liability of another person or organization (indemnitee) for damages for injury, sustained by a third person or organization, provided such:

   1. injury was caused by an **act** first committed after the execution of such contract or agreement; and

   2. **act** was committed by:

     a. you or on your behalf; or

     b. such indemnitee, but only to the extent such **act** is in accordance with a written contract or agreement between you and the indemnitee.

**CHUBB®**   *Integrated Liability And Indemnity Insurance*

## Definitions

**Indemnity Contract**
**(continued)**

B.    does not include any contract or agreement in which any **insured** assumes the liability of another person or organization for damages for injury arising out of any **intellectual property infringement**.

**Information And Network Technology Product**

**Information and network technology product** means:

A.    communication, computer, data security, electronic, information, Internet, network or website:

    1.    equipment or parts; or

    2.    programs or systems; and

B.    software, data or other information that is in electronic form.

**Insured**

**Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured section of this contract.

**Intellectual Property Infringement**

**Intellectual property infringement:**

A.    means infringement upon a person's or organization's:

    1.    collective mark, service mark or other trademarked logo, name, slogan, title or other symbol;

    2.    copyright; or

    3.    Internet domain name or e-mail address.

B.    does not include any:

    1.    violation of any license granted to any **insured**.

    2.    infringement upon any:

        a.    software or its source content or material;

        b.    other computer code or its source content or material; or

        c.    other expression, method or process designed to control or facilitate any operation or other use of any computer or other automated system.

    3.    **disclosure of confidential information** or **reputation disparagement**.

**Intellectual Property Law Or Right**

**Intellectual property law or right** means any:

•    certification mark, copyright, patent or trademark (including collective or service marks);

•    right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

•    other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

•    other judicial or statutory law concerning piracy, passing off or similar practices.

## *Definitions*
*(continued)*

| | |
|---|---|
| *Leased Worker* | **Leased worker** means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business. **Leased worker** does not include a **temporary worker**. |

*Mixed Dust*

**Mixed dust** means any combination or mixture of **asbestos** or **silica** and any other dust, fibers or particles, in any form, including any presence or use in any alloy, by-product, compound or other material or **waste**.

*Money*

**Money** means any:

A.   medium of exchange adopted or authorized by a government as part of its currency;

B.   contract, instrument or security that represents any money described in subparagraph A. above; or

C.   data or other information that represents any money or other property described in subparagraphs A. or B. above.

*Nuclear Or Radioactive Material*

**Nuclear or radioactive material** means any:

• by-product material, source material or special nuclear material; or

• other solid, liquid or gaseous substance that emits radiation;

including its presence or use in any alloy, by-product, compound or other material or **waste**.

As used herein, by-product material, source material and special nuclear material have the meanings given them in the United States of America Atomic Energy Act of 1954 or any law amendatory thereof or in any similar applicable law in any jurisdiction.

*Officer*

**Officer** means a person holding any of the officer positions created by an organization's by-laws, charter, constitution or any similar governing document.

*Other Insurance*

**Other insurance:**

A.   means any insurance or bond affording coverage that this insurance would also afford.

B.   includes any:

1.   type of deductible, self-insurance or other mechanism arranged for funding of loss.

2.   discovery period or extended reporting period available under any insurance, bond or other mechanism described above.

3.   reinstatement of limits or supplemental or other limits available under any insurance, bond or other mechanism described above.

C.   does not include insurance negotiated specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance.

CHUBB®                     *Integrated Liability And Indemnity Insurance*

*Definitions*
*(continued)*

*Pollutants*

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**.

*Privacy Data Breach*

**Privacy data breach:**

- means an actual unauthorized access to or unauthorized use of information about one or more persons that is non-public personal information as established by law.

- includes any persistent or repeated exposure to actual unauthorized access or unauthorized use directed at any **insured**. All such persistent or repeated exposure shall be deemed to occur at the time of the first actual unauthorized access or unauthorized use.

*Privacy Remediation Expenses*

**Privacy remediation expenses:**

A.  means reasonable and necessary expenses incurred after the discovery of a **privacy data breach:**

   1.  for broadcast, electronic, printed, telecast or telephonic announcements, communications or notices incurred to comply with a regulatory or statutory law related to the notification of another person or organization in connection with such **privacy data breach** ("Notification Expenses");

   2.  to determine the cause and extent of the **privacy data breach** ("Forensic Expenses");

   3.  for:

      a.  credit monitoring expenses; or

      b.  public relations expenses;

   in connection with the **privacy data breach** ("Remediation Expenses"); and

   4.  to investigate or defend against a regulatory action against the **insured** taken by a regulatory authority because of the **privacy data breach** ("Regulatory Costs").

B.  does not include any salaries or expenses of any **insured's** **employees** or directors, managers, (if a limited liability company), members (if a partnership, joint venture or limited liability company), **officers** or partners (if a partnership or joint venture) or workers (whether or not any of the foregoing is an **employee**).

*Reputation*
*Disparagement*
*(Including Violation Of*
*Privacy)*

**Reputation disparagement:**

A.  means:

   1.  electronic, oral, written or other:

      a.  publication of content, information or material that libels or slanders a person or organization;

      b.  publication of content, information or material that disparages a person's or organization's goods, products or services; or

      c.  publication, disclosure or other use of content, information or material that violates a person's right of privacy or right of publicity.

## *Definitions*

| | |
|---|---|
| *Reputation Disparagement (Including Violation Of Privacy) (continued)* | 2.   false arrest, false detention or other false imprisonment.<br><br>3.   malicious prosecution.<br><br>4.   wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner.<br><br>5.   discrimination, harassment or segregation based on a person's protected human characteristics as established by law.<br><br>B.   does not include any **disclosure of confidential information** or **intellectual property infringement**. |
| *Reward Expenses* | **Reward expenses** means property or other consideration paid or incurred by the **insured** to a person (other than law enforcement personnel) for information, leading to conviction of a felony or its equivalent by a court or other judicial authority having jurisdiction. |
| *Securities Law* | **Securities law** means any judicial, regulatory or statutory law designed, in whole or in part, to:<br><br>•   prevent or prohibit fraudulent, unfair or similar practices; or<br><br>•   require full and periodic disclosure of information;<br><br>in connection with any:<br><br>•   offering;<br><br>•   registration; or<br><br>•   trading;<br><br>of any instrument or other evidence of creditorship or ownership. |
| *Silica* | **Silica** means silica in any form (including silicates or similar silicon compounds), including its presence or use in any alloy, by-product, compound or other material or **waste**. |
| *Suit* | **Suit:**<br><br>A.   means a civil proceeding in which damages for injury are sought.<br><br>B.   includes an arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent.<br><br>Subparagraph A. above includes a claim for injunctive relief to prevent such injury from continuing or resuming. |
| *Threat* | **Threat** means an oral or written declaration that an **unauthorized access or use** has happened or will happen. |

**⊏⊓∪⊟⊟°**                    *Integrated Liability And Indemnity Insurance*

## Definitions
(continued)

| | |
|---|---|
| *Temporary Worker* | **Temporary worker** means a person that is furnished to a party to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions. |

*Unauthorized Access Or Use*

**Unauthorized access or use** means actual unauthorized access to or unauthorized use of software, data or other information in electronic form that results in **destructive programming**.

*Waste*

**Waste** includes material to be recycled, reconditioned or reclaimed.

*Your Product*

**Your product:**

A.  means:

    1.  goods or products created, developed, installed, leased or licensed (to others) or otherwise manufactured, sold, handled or distributed by:

        a.  you;

        b.  others trading under your name; or

        c.  a person or organization whose assets or business you have acquired; and

    2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

B.  includes:

    1.  representations or warranties made with respect to the fitness, performance, quality or use of **your product**; and

    2.  the providing of or failure to provide instructions or warnings in connection with **your product**.

*Your Service*

**Your service:**

A.  means services performed in connection with **your product**, including related consulting, staffing, training and other support services performed by:

    1.  you or on your behalf; or

    2.  a person or organization whose assets or business you have acquired.

B.  includes:

    1.  representations or warranties made with respect to the fitness, performance, quality or use of **your service**; and

    2.  the providing of or failure to provide instructions or warnings in connection with **your service**.

*Liability Insurance*

*Integrated Liability And Indemnity Insurance Extension For Technology*

*Table Of Contents*

| **Section** | **Page No.** |
|---|---|
| *Introduction* | *3* |
| *Coverages* | *3* |
| *Limits Of Insurance* | *3* |
| *Exclusions* | *4* |
| *Definitions* | *7* |

LIABILITY CONTRACT

INTEGRATED LIABILITY AND INDEMNITY INSURANCE FOR TECHNOLOGY

*THIS PAGE INTENTIONALLY LEFT BLANK*

**CHUBB®**

### Integrated Liability And Indemnity Insurance Extension For Technology

## Contract

**Introduction**

All of the provisions contained in the other forms that comprise this policy apply, unless they have been deleted or modified by this Integrated Liability And Indemnity Insurance Extension For Technology.

Under Coverages, the coverage titled Coverage A – Errors Or Omissions Liability is deleted and replaced by the following.

## Coverages

**Coverage A – Errors Or Omissions Liability**

**THIS COVERAGE APPLIES ON A CLAIMS-MADE BASIS. SEE THE PROVISION TITLED CLAIMS-MADE LIABILITY COVERAGE COMMON PROVISIONS.**

Subject to all of the terms and conditions of this insurance, we will pay:

- damages and **claimant costs** that the **insured** becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an **indemnity contract**, for **financial injury**; and

- **privacy remediation expenses** that the **insured** is obligated to incur pursuant to the terms of a written contract or agreement pertaining to **your product** or **your service**;

caused by an **act** that results in an actual or suspected:

A.   defect, deficiency, inadequacy or dangerous condition in:

   1.   **your product**; or

   2.   **your service**; or

B.   failure:

   1.   of **your product** to perform; or

   2.   to perform **your service**;

in accordance with the terms of a contract or agreement.

Under the Limits Of Insurance, the following limit is added.

## Limits Of Insurance

**Contractually Assumed Privacy Remediation Expenses Aggregate Limit**

Subject to the Errors Or Omissions Aggregate Limit, the Contractually Assumed Privacy Remediation Expenses Aggregate Limit is the most we will pay for the sum of all **privacy remediation expenses** the **insured** is obligated to incur pursuant to the terms of a written contract or agreement pertaining to **your product** or **your service** ("Contractually Assumed Privacy Remediation Expenses") and other amounts described as reducing the Limits Of Insurance (see the provision titled Payments That Reduce The Limits Of Insurance) under Coverage A.

Any such sum we pay will reduce the amount of this Aggregate Limit and any other applicable limit. The remaining amount of any such limit is the most that will be available for any other payment.

Under the Limits Of Insurance, the provision titled Payments That Reduce The Limits Of Insurance is deleted and replaced by the following.

## Limits Of Insurance

### Payments That Reduce The Limits Of Insurance

With respect to all liability coverages, any payments made for:

* damages;
* **claimant costs**;
* **claim adjustment expenses**; or
* "Contractually Assumed Privacy Remediation Expenses";

will reduce the applicable Limits Of Insurance.

Payments we make under the Supplementary Payments section of this contract will not reduce the Limits Of Insurance.

Under Exclusions, the exclusions titled Governmental Claims Or Proceedings, Intellectual Property Laws Or Rights (Except Coverage D) and Money are deleted and replaced as follows. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverages under this contract.

## Exclusions

### Governmental Claims Or Proceedings

This insurance does not apply to any damages, loss, cost or expense in any way related to any claim made or proceeding brought by or on behalf of any governmental authority.

This exclusion does not apply to:

A.   the liability for damages for:

    1.   **financial injury** that the **insured** would have to a person or organization (other than a governmental authority) because of a claim or proceeding by a governmental authority against such person or organization that results from ownership, maintenance or use of **your product** or **your service**; or

    2.   injury:

        a.   sustained by a governmental authority (other than the **insured**) that results from its ownership, maintenance or use of **your product** or **your service**; or

        b.   that the **insured** would have in the absence of such claim made or proceeding brought by or on behalf of a governmental authority.

B.   Privacy Remediation Expenses Additional Coverage.

Subparagraph A.1. above only applies to Coverage A.

### Intellectual Property Laws Or Rights (Except Coverage D)

A.   This insurance does not apply to any damages, loss, cost or expense arising out of, giving rise to or in any way related to any actual, alleged or threatened:

    1.   assertion; or

    2.   infringement or violation;

by any person or organization (including any **insured**) of **any intellectual property law or right**.

**CHUBB**

## Exclusions

*Intellectual Property Laws Or Rights (Except Coverage D) (continued)*

Further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation of or a reference to an infringement or violation of any **intellectual property law or right**, even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**.

B. With respect to Coverage D only, this exclusion applies:

    1. unless the only infringement or violation of an **intellectual property law or right** is one that is described in the definition of **intellectual property infringement**; and

    2. a Limit Of Insurance applicable to **intellectual property infringement** is shown in the Declarations.

C. Subparagraph B. above does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation that the actual, alleged or threatened infringement or violation directly or indirectly resulted from an actual or suspected:

    1. defect, deficiency, inadequacy or dangerous condition in:

        a. **your product**; or

        b. **your service**; or

    2. failure:

        a. of **your product** to perform; or

        b. to perform **your service**;

    in accordance with the terms of a contract or agreement.

*Money*

This insurance does not apply to any damages, loss, cost or expense incurred by any **insured** or others for the value of **money** itself:

- owned by any **insured**;

- for which any **insured** is legally obligated; or

- held by any **insured** in any capacity, regardless of whether such **insured** is legally obligated;

if such **money** is lost due to the actual or alleged:

- disappearance or theft of the **money**; or

- injury to the **money**.

*THIS PAGE INTENTIONALLY LEFT BLANK*

# CHUBB°

## Integrated Liability And Indemnity Insurance Extension For Technology

Under Definitions, the definitions titled Disclosure Of Confidential Information, Indemnity Contract, Intellectual Property Infringement, Your Product and Your Service are deleted and replaced by the following.

## Definitions

**Disclosure Of Confidential Information**

**Disclosure of confidential information:**

A.  means electronic, oral, written or other:

    1.  publication, disclosure or other use of confidential or proprietary content, information or material in violation of the expressed confidentiality or non-disclosure terms of any written contract or agreement related, in whole or in part, to **your product** or **your service**; or

    2.  publication or other disclosure of confidential or proprietary content, information or material in violation of the expressed confidentiality or non-disclosure terms of a written contract or agreement pertaining to your business.

B.  does not include any **intellectual property infringement** or **reputation disparagement.**

**Indemnity Contract**

**Indemnity contract** means:

A.  a contract or agreement pertaining to your business in which you assume the liability of another person or organization (indemnitee) for damages for injury sustained by a third person or organization, provided such:

    1.  injury was caused by an **act** first committed after the execution of such contract or agreement; and

    2.  **act** was committed by:

        a.  you or on your behalf; or

        b.  such indemnitee, but only to the extent such **act** is in accordance with a written contract or agreement between you and the indemnitee.

Subparagraph A. above does not include any contract or agreement in which any **insured** assumes the liability of another person or organization for damages for injury arising out of any **intellectual property infringement.**

B.  with respect to injury caused by an **act** that results in **intellectual property infringement** under Coverage D, a written contract or agreement pertaining to your business where you authorize another person or organization (indemnitee) to use your:

    1.  collective mark, service mark or other trademarked logo, name, slogan, title or other symbol;

    2.  copyright;

    3.  Internet domain name or e-mail address;

    4.  mask work or semiconductor topography right; or

    5.  trade dress; and

in which you assume the liability of such indemnitee for damages for injury sustained by a third person or organization, provided such:

    1.  injury was caused by an **act** first committed after the execution of such contract or agreement; and

## *Definitions*

*Indemnity Contract*
*(continued)*

   2.  **act** was committed by:

      a.  you or on your behalf; or

      b.  such indemnitee, but only to the extent such **act** is in accordance with a written contract or agreement between you and the indemnitee.

  C.  For the purposes of this definition, your intellectual property does not include any intellectual property licensed to you.

*Intellectual Property*
*Infringement*

**Intellectual property infringement:**

A.  means infringement upon a person's or organization's:

   1.  collective mark, service mark or other trademarked logo, name, slogan, title or other symbol;

   2.  copyright;

   3.  Internet domain name or e-mail address;

   4.  mask work or semiconductor topography right; or

   5.  trade dress.

B.  does not include any:

   1.  violation of a license granted to an **insured**.

   2.  infringement upon any:

      a.  software or its source content or material;

      b.  other computer code or its source content or material; or

      c.  other expression, method or process designed to control or facilitate any operation or other use of any computer or other automated system.

   3.  **disclosure of confidential information** or **reputation disparagement**.

*Your Product*

**Your product:**

A.  means:

   1.  goods or products, including **information and network technology products**, created, developed, installed, leased or licensed (to others) or otherwise manufactured, sold, handled or distributed by:

      a.  you;

      b.  others trading under your name; or

      c.  a person or organization whose assets or business you have acquired; and

   2.  containers (other than vehicles), materials, parts or equipment furnished in connection with:

      a.  such goods or products; or

      b.  **your service**.

**⊏HUBB°**

**Integrated Liability And Indemnity Insurance Extension For Technology**

## Definitions

**Your Product**
**(continued)**

B.    includes:

    1.    representations or warranties made with respect to the fitness, performance, quality or use of **your product**;

    2.    the providing of or failure to provide instructions or warnings in connection with **your product**; and

    3.    **your service** performed in connection with **your product**.

**Your Service**

**Your service**:

A.    means services, including:

    1.    **information and network technology services**; and

    2.    related consulting, staffing, training and other support services;

performed by:

    •    you or on your behalf; or

    •    a person or organization whose assets or business you have acquired.

B.    includes:

    1.    representations or warranties made with respect to the fitness, performance, quality or use of **your service**; and

    2.    the providing of or failure to provide instructions or warnings in connection with **your service**.

Under Definitions, the following definition is added.

## Definitions

**Information And Network Technology Services**

**Information and network technology services** means analysis, data security, design, integration, maintenance, management, processing, programming, repair or support services in connection with any **information and network technology product**.

*Liability Insurance Section*

*Endorsements*

 CHUBB°

### Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018 TO APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

This Endorsement applies to the following forms:

INTEGRATED LIABILITY AND INDEMNITY INSURANCE

The following provision is added to this policy.

**Non-Accumulation Of Limits Of Insurance**

If this insurance contract is one of several insurance contracts issued by us or other member companies of the Chubb Group of Insurance Companies to you, or your subsidiary organizations, then any claim that could be covered under two or more contracts will be subject to the limits of insurance under the contract with the highest applicable limit of insurance or, if the limits are the same, under the limits of insurance of one contract.

All other terms and conditions remain unchanged.

*Authorized Representative*

# CHUBB®

## *Liability Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018  TO  APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

This Endorsement applies to the following forms:

INTEGRATED LIABILITY AND INDEMNITY INSURANCE
INTEGRATED LIABILITY AND INDEMNITY INSURANCE EXTENSION FOR TECHNOLOGY

## *Terrorism Provisions*

A new section titled Terrorism Provisions is added to the end of this contract.

*Cap On Certified
Terrorism Losses*

If:

- aggregate insured losses attributable to one or more **certified acts of terrorism** under the **terrorism law** exceed $100 billion in a calendar year; and

- we have met our insurer deductible under the **terrorism law**,

we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## *Terrorism Definitions*

A new section titled Terrorism Definitions is added.

*Certified Act Of Terrorism*

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury of the United States to be an act:

A.  of terrorism, a violent act or an act that is dangerous to human life, property or infrastructure; and

B.  that results in damage:

    1.  within the **United States**; or

*Liability Insurance*     *Cap On Certified Terrorism Losses*     *continued*
Form 80-02-6403 (Rev. 1-15)     *Endorsement*     *Page 1*

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

## *Liability Insurance*
*(continued)*

 2. outside of the **United States** in the case of:

 a. an air carrier or vessel as described in the **terrorism law**; or

 b. the premises of a mission of the United States of America,

which was committed by an individual or individuals as part of an effort to:

- coerce the civilian population; or

- influence the policy or affect the conduct of the Government,

of the **United States.**

**Certified act of terrorism** does not include an act that:

- is committed as part of the course of a war declared by the Congress of the **United States**; or

- does not result in property and casualty insurance losses that exceed $5 million in the aggregate and are attributable to all types of insurance subject to the **terrorism law.**

---

*State*

**State** means any state of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands, and any territory or possession of the United States of America.

---

*Terrorism Law*

**Terrorism law** means the Terrorism Risk Insurance Act of 2002 as amended.

---

*United States*

**United States** means:

- a **state**; and

- the territorial sea and the continental shelf of the United States of America, as described in the **terrorism law.**

All other terms and conditions remain unchanged.

*Authorized Representative*

---

*Includes copyrighted material of Insurance Services Office, Inc. with its permission.*

# CHUBB®

**Liability Insurance**

## *Endorsement*

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018   TO   APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

This Endorsement applies to the following forms:

INTEGRATED LIABILITY AND INDEMNITY INSURANCE
INTEGRATED LIABILITY AND INDEMNITY INSURANCE EXTENSION FOR TECHNOLOGY

## *Deductibles*

The following section, titled Deductibles, is added to the forms described above and replaces any applicable deductible provisions contained therein.

*Basis And Amounts Of Deductibles*

As used in this endorsement, words and phrases that appear in "quotation marks" have special meanings as described in the Deductible Definitions provision of this endorsement.

The provisions of this Deductible section apply to the Coverages as indicated in the Declarations and this endorsement. Each Deductible applies separately from and in addition to any other Deductible.

If the applicable Deductible is indicated to apply on the basis of:

* Each Claim, then the amount of the Deductible applies separately to the sum of amounts described in the provision titled Deductible Obligations, in connection with loss allocable to each separate person and organization that arises out of each separate "event."

* Each "Event," then the amount of the Deductible applies separately to the sum of amounts described in the provision titled Deductible Obligations, in connection with loss that arises out of each separate "event."

Deductible amounts:

A.  starting with the beginning of the policy period shown in the Declarations, apply separately to each consecutive annual period and to any remaining period and to any extension period.

---

## *Liability Endorsement*
*(continued)*

B.    will not be less than the amounts as indicated in the Declarations and this endorsement, regardless of whether this insurance (or this endorsement) is:

1.    issued for a policy period of less than twelve (12) months; or

2.    terminated before the end of the policy period shown in the Declarations for any reason.

---

### *Deductible Obligations (Excess And Reimbursement)*

This insurance applies to amounts in excess of Deductibles, and ultimately you are obligated for amounts within Deductibles, regardless of whether we pay or incur amounts within Deductibles.

Deductibles apply to the amounts first paid or incurred for "damages/loss" and "deductible expenses" (to which this insurance would apply but for the Deductible) as such amounts are first paid or incurred.

If we pay or incur any "damages/loss" or "deductible expenses" within any Deductible, then you must promptly reimburse us for all such "damages/loss" and "deductible expenses." Regardless of whether we pay any "damages/loss," you must promptly reimburse us for all "deductible expenses" within any Deductible.

There is no aggregate limit applicable to your Deductible Obligations, and you must promptly pay or reimburse all amounts described in this provision regardless of the number of losses.

The first named insured shown in the Declarations agrees, and is authorized, to promptly reimburse us for any and all reimbursable amounts (relative to this insurance or any other insurance issued by us or an affiliate of ours including any antecedent insurance). Each named insured is jointly and severally liable for any and all such amounts.

Failure to promptly reimburse us (relative to this insurance or any other insurance issued by us or an affiliate of ours including any antecedent insurance) shall be deemed an event of nonpayment of premium.

---

### *Investigation, Defense, Settlements And Rights Of Recovery*

Regardless of the application of any Deductible:

A.    the terms and conditions of this insurance continue to apply, including those with respect to:

1.    our rights to investigate any claim or "event" and to make any settlements; and

2.    the insured's duties in the event of any claim, "event" or suit.

B.    we may, at our discretion, initiate or participate in an appeal of a judgment, if such judgment may result in a payment under this insurance.

C.    our rights of recovery against others continue to apply. Any amount recovered will be apportioned as follows:

1.    first, we shall receive all amounts recovered until we have been fully reimbursed for all amounts we have paid or incurred (including costs or expenses of such recovery proceedings) in connection with amounts that exceed any Deductible.

---

CHUBB°

## Liability Insurance

### Endorsement

| | |
|---|---|
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |

---

2. then, remaining amounts recovered will be applied to reimburse you and us, in accordance with the respective interests in connection with amounts within any Deductible (including costs or expenses of such recovery proceedings).

---

**Limits Of Insurance**

The following provision is added to Limits Of Insurance.

*Each Claim Or "Event"*

If the applicable Limit of Insurance applies on an each claim or each "event" basis, then such limit (other than an aggregate limit) will be reduced by "damages/loss" paid or incurred within the Deductible.

If expenses are described as reducing the Limits Of Insurance of the applicable Coverage, then such expenses within the Deductible will reduce such Limits Of Insurance.

The Limits Of Insurance will not be increased or reinstated regardless of the applicability of any Deductible or any amount that you must pay or reimburse in connection with any Deductible.

---

**Deductible Definitions**

As used in this endorsement, the following words and phrases have special meanings as described below.

*"Damages/Loss"*

"Damages/loss" refers to damages or other indemnity as described under the applicable Coverage, other than "deductible expenses." Deductibles applying to bodily injury include damages and any medical expenses.

---

## *Liability Endorsement*
(continued)

*"Deductible Expenses"*   "Deductible expenses" refers to the following expenses as described under the applicable insurance:

A.   attorney and paralegal fees and salaries (including those of attorneys and paralegals who are our employees).

B.   expenses relating to a suit, including the cost of expert witnesses, transcripts, court reporters, research reports and depositions.

C.   the cost of:

1.   bail bonds; or

2.   bonds required to:

a.   appeal judgments (in connection with the initiation and continuation of an appeal agreed to by us); or

b.   release attachments.

D.   costs taxed against the insured in a suit.

E.   the cost and expense of any investigation that we undertake.

F.   other reasonable expenses that we allocate to a specific claim or "event."

*"Event"*   "Event" refers to an occurrence, offense, wrongful act or other cause of loss as described under the applicable Coverage.

All other terms and conditions remain unchanged.

*Authorized Representative*

**CHUBB**°

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018   TO   APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

This Endorsement applies to the following forms:

INTEGRATED LIABILITY AND INDEMNITY INSURANCE

Under Additional Coverages, the following Additional Coverage is added.

## *Additional Coverages*

*Misappropriation Of Communication Services*

Subject to all of the terms and conditions of this insurance, we will reimburse the **first named insured** for:

- charges and expenses; and
- reasonable and necessary costs to mitigate such charges and expenses;

paid or incurred by such **insured** that result from fraudulent access or fraudulent use of **communication services**.

If it cannot be determined when such fraudulent access or fraudulent use first occurred, then the fraudulent access or fraudulent use will be deemed to have first occurred at the time you first notify us in writing of the fraudulent access or fraudulent use.

This Additional Coverage applies only if such charges, expenses or costs are:

- not excluded under any section of this contract; and
- reported to us in writing within one year of the date the fraudulent access or fraudulent use first occurred.

Our obligations hereunder end when we have used up the applicable Limits Of Insurance.

## Additional Coverages

**Misappropriation Of Communication Services (continued)**

We have no other obligation or liability to pay sums or perform acts or services under this Additional Coverage.

Under Exclusions, the exclusion titled Communication Services is deleted and replaced by the following.

## Exclusions

**Communication Services**

This insurance does not apply to any damages, loss, cost or expense for any actual or alleged:

- theft of **communications services**; or
- unauthorized access to or unauthorized use of such services.

This exclusion does not apply to Misappropriation Of Communication Services Additional Coverage.

Under Definitions, the definition s titled Cyber-Threat Expense, Privacy Data Breach, Privacy Remediation Expenses and Unauthorized A ccess Or Use are deleted and replaced by the following.

## Definitions

**Cyber-Threat Expense**

**Cyber-threat expense** means:

A.   property or other consideration surrendered to remove or mitigate a **threat**; or

B.   reasonable and necessary expenses incurred to determine the existence, nature or scope of an actual or suspected **threat**.

**Privacy Data Breach**

**Privacy data breach:**

- means an actual or suspected unauthorized access to or unauthorized use of information about one or more persons that is non-public personal information as established by law.

- includes any persistent or repeated exposure to actual unauthorized access or unauthorized use directed at any **insured**. All such persistent or repeated exposure shall be deemed to occur at the time of the first actual unauthorized access or unauthorized use.

**Privacy Remediation Expenses**

**Privacy remediation expenses:**

A.   means reasonable and necessary expenses incurred after the discovery of a **privacy data breach:**

  1.   for broadcast, electronic, printed, telecast or telephonic announcements, communications or notices incurred to comply with a regulatory or statutory law related to the notification of another person or organization in connection with such **privacy data breach** ("Notification Expenses");

  2.   to determine the cause and extent of the **privacy data breach** ("Forensic Expenses");

  3.   for:

    a.   credit monitoring expenses; or

**CHUBB**   *Liability Insurance*

*Endorsement*

*Effective Date*       APRIL 15, 2018

*Policy Number*       3590-65-36 TPA

## Definitions

*Privacy Remediation*
*Expenses*
*(continued)*

    b.    public relations expenses;

in connection with the **privacy data breach** ("Remediation Expenses");

4.    to retain the services of a law firm or other professional services firm:

    a.    approved by us; or

    b.    not approved by us, subject to the applicable deductible shown in the Declarations;

for consultative and pre-litigation legal services (hereinafter "Cyber Incident Response Coach");

5.    to investigate or defend against a regulatory action against the **insured** taken by a regulatory authority because of the **privacy data breach** ("Regulatory Costs"); and

6.    with our prior written consent, which will not be unreasonably withheld, other expenses required to comply with applicable laws, rules or regulations.

B.    does not include any salaries or expenses of any **insured's employees** or directors, managers, (if a limited liability company), members (if a partnership, joint venture or limited liability company), **officers** or partners (if a partnership or joint venture) or workers (whether or not any of the foregoing is an **employee**).

Expenses incurred pursuant to subparagraph A.4.b. are subject to the applicable Deductible shown in the Declarations.

*Unauthorized Access Or*
*Use*

**Unauthorized access or use** means actual or suspected unauthorized access to or unauthorized use of software, data or other information in electronic form that results in **destructive programming**.

All other terms and conditions remain unchanged.

*Authorized Representative*

C
O
M
M
O
N

P
O
L
I
C
Y

*Common Policy Conditions Section*

C
O
N
D
I
T
I
O
N
S

ᒍᕼᑌᗷᗷ°

## *Policy Conditions*

## *Schedule of Forms*

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018  TO  APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 10-02-0402 | 2-98 | CCIC - SERVICE OF SUIT | 04/15/18 | 04/17/18 |
| 10-02-1891 | 10-09 | CCIC POLICY NOTICE - FLORIDA | 04/15/18 | 04/17/18 |
| 80-02-9001 | 6-98 | HOW TO REPORT A LOSS | 04/15/18 | 04/17/18 |
| 80-02-9090 | 6-05 | COMMON POLICY CONDITIONS | 04/15/18 | 04/17/18 |
| 80-10-9138 | 10-97 | IMPORTANT NOTICE TO POLICY HOLDERS-FLORIDA | 04/15/18 | 04/17/18 |
| 80-02-9743 | 9-15 | FLORIDA MANDATORY - CANCELLATION & NONRENEWAL | 04/15/18 | 04/17/18 |
| 80-02-9800 | 12-08 | INSURING AGREEMENT | 04/15/18 | 04/17/18 |
| 99-10-0792 | 9-04 | IMPORTANT NOTICE - OFAC | 04/15/18 | 04/17/18 |
| 99-10-0820 | 2-05 | FL NOTICE - RISK MGMT PROGRAM AVAILABILITY | 04/15/18 | 04/17/18 |
| 99-10-0872 | 6-07 | AOD POLICYHOLDER NOTICE | 04/15/18 | 04/17/18 |
| 99-10-0951 | 9-15 | IMPORTANT NOTICE - TERRORISM | 04/15/18 | 04/17/18 |
| 99-10-0991 | 10-16 | ADDRESS CHANGE ENDORSEMENT | 04/15/18 | 04/17/18 |

*last page*

**CHUBB®**          *Common Policy Conditions*

*Contract*

| | |
|---|---|
| *Conditions* | The following Conditions are included under each part of the policy, unless stated otherwise. |
| *Audit Of Books And Records* | We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards. |
| *Cancellation* | The first named insured may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect. |
| | We may cancel this policy or any of its individual coverages at any time by sending to the first named insured a notice 60 days (20 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first named insured's last known address, and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. |
| | The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable. |
| *Changes* | This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives. |
| *Compliance By Insureds* | We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with all of the terms and conditions of the policy. |
| *Compliance With Applicable Trade Sanctions* | This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance. |
| *Conformance* | Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes. |
| *First Named Insured* | The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named insured will act on behalf of all other named insureds for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy. |
| *Inspections And Surveys* | We may: |

- make inspections and surveys at any time;
- give you reports on the conditions we find; and
- recommend changes.

## *Conditions*

**Inspections And Surveys (continued)**

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

- are safe or healthful; or
- comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations for us.

**Titles Of Paragraphs**

The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

**Transfer Of Rights And Duties**

Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed.

**When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first named insured's last known address, written notice of the nonrenewal not less than 60 days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

C
O
M
M
O
N

P
O
L
I
C
Y

*Common Policy Conditions Section*

*Endorsements*

E
N
D
O
R
S
E
M
E
N
T
S

# ⊏⊏⊢⊔⊟⊟° *Policy Conditions*

## *Endorsement*

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018  TO  APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

The following changes are made as respects exposures in the state of Florida.

Under Conditions, the provisions titled Cancellation and When We Do Not Renew are deleted and replaced by the following:

### *Conditions*

*Cancellation*

A.   The named insured may cancel this policy at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect.

B.   *Cancellation of policies in effect for less than 90 days*

    1.   If this policy has been in effect for less than 90 days, we may cancel this policy by mailing or delivering to the Named Insured's last known address written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

        a.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        b.   20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

            (i.)   A material misstatement or misrepresentation; or

            (ii.)   A failure to comply with underwriting requirements established by us.

## *Conditions*

*Cancellation*
*(continued)*

2. We may not cancel:

    a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of loss or damage to the insured property; or

    b. Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

C. *Cancellation of policies in effect more than 90 days*

1. If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. The policy was obtained by a material misstatement;

    c. There has been a failure to comply with underwriting requirements established by us within 90 days of the effective date of the coverage;

    d. There has been a substantial change in the risk covered by the policy;

    e. The cancellation is for all insureds under such policies for a given class of insureds;

    f. On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of loss or damage to the insured property;

    g. On the basis of a single property insurance claim which is the result of water damage, if we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

    h. The cancellation of some or all of our policies is necessary to protect the best interests of the public or policyholders and such cancellation is approved by the Florida Office Of Insurance Regulation.

2. If we cancel this policy for any of these reasons, we will mail or deliver to the Named Insured's last known address written notice of cancellation, accompanied by the specific reasons for cancellation at least:

    a. 10 days before the effective date of cancellation if cancellation is for non-payment of premium; or

    b. 45 days before the effective date of cancellation if:

        (i.) Cancellation is for one or more of the reasons stated in Paragraph C.1.b. through C.1.g. above and this policy does not cover a residential structure or its contents; or

        (ii.) Cancellation is based on the reason stated in paragraph C.1.h. above.

# CHUBB®

## *Policy Conditions*

### *Endorsement*

| | |
|---|---|
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |

## *Conditions*

*Cancellation*
*(continued)*

    c.    120 days before the effective date of cancellation if:

        (i.)    Cancellation is for one or more of the reasons stated in Paragraph C.1.b. through C.1.g.; and

        (ii.)    This policy covers a residential structure or its contents

    d.    If this policy has been in effect for more than 90 days and covers a residential structure or its contents, we may not cancel this policy based on credit information available in public records.

D.    If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect unless this is an audit policy. If this is an audit policy, then, subject to your full cooperation with us or our agent in securing the necessary data for audit, we will refund any premium within 90 days of the date cancellation takes effect. If our audit is not completed within this time limitation, then we shall accept your own audit, and any premium refund due shall be mailed within 10 working days of receipt of your audit. The cancellation will be effective even if we have not made or offered a refund.

*When We Do Not Renew*

A.    If we decide not to renew this policy we will mail or deliver to the Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

    1.    45 days prior to the expiration of the policy if this policy does not cover a residential structure or its contents; or

    2.    120 days prior to the expiration of the policy if this policy covers a residential structure or its contents.

B.    Any notice of nonrenewal will be mailed or delivered to the Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.    We may not refuse to renew this policy:

    1.    On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent reoccurrence of loss or damage to the insured property;

    2.    On the basis of filing of claims for sinkhole loss. However, we may refuse to renew this policy if:

        a.    The total of such property insurance claim payments for this policy equals or exceeds the policy limits in effect on the date of loss for property damage to the covered building; or

## *Conditions*

*When We Do Not Renew*
*(continued)*

    b.    You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based; or

3.    Solely on the basis of a single property insurance claim which is the result of water damage, unless we can demonstrate that you have failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

D.    Notwithstanding the provisions of paragraphs C. immediately above, we may refuse to renew this policy if:

1.    This policy includes sinkhole loss coverage. If we nonrenew this policy for purposes of removing sinkhole loss coverage, pursuant to section 627.706, Florida Statutes, we will offer you a policy that includes catastrophic ground cover collapse coverage; or

2.    Nonrenewal of some or all of our policies is necessary to protect the best interests of the public or policyholders and such nonrenewal is approved by the Florida Office of Insurance Regulation.

Under Conditions, the following is added:

## *Conditions*

*Limitations On Cancellation And Nonrenewal In The Event Of A Hurricane Or Wind Loss – Residential Property*

Limitations On Cancellation And Nonrenewal In The Event Of Hurricane Or Wind Loss – Residential Property:

A.    The following provisions apply to a policy covering a residential structure or its contents, if such property has sustained damage as a result of a hurricane or windstorm that is the subject of a declaration of emergency by the Governor and filing of an order by the Commissioner of Insurance Regulation:

1.    Except as provided in A.2., we may not cancel or nonrenew the policy until at least 90 days after repairs to the residential structure have been substantially completed so that it is restored to the extent that it is insurable by another insurer writing policies in Florida. If we elect to not renew the policy, we will provide at least 100 days' notice that we intend to nonrenew 90 days after the substantial completion of repairs.

2.    We may cancel or nonrenew the policy prior to restoration of the structure, for any of the following reasons:

    a.    Nonpayment of premium;

    b.    Material misstatement or fraud related to the claim;

    c.    We determine that you have unreasonably caused a delay in the repair of the structure; or

    d.    We have paid the policy limits.

If we cancel or nonrenew for nonpayment of premium, we will give you 10 days' notice. If we cancel for a reason listed in 2.b., 2.c. or 2.d., we will give you 45 days' notice.

**CHUBB**°

## *Policy Conditions*

### *Endorsement*

*Effective Date*     APRIL 15, 2018

*Policy Number*     3590-65-36 TPA

### *Conditions*

*Limitations On Cancellation And Nonrenewal In The Event Of A Hurricane Or Wind Loss – Residential Property (continued)*

B.    With respect to a policy covering a residential structure or its contents, any cancellation or nonrenewal that would otherwise take effect during the duration of a hurricane will not take effect until the end of the duration of such hurricane, unless a replacement policy has been obtained and is in effect for a claim occurring during the duration of the hurricane. We may collect premium for the period of time for which the policy period is extended.

C.    With respect to B., a hurricane is a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service (hereafter referred to as NHC). The hurricane occurrence begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the NHC, and ends 72 hours after the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the NHC.

All other terms and conditions remain unchanged.

*Authorized Representative* _____

**CHUBB°**

## Endorsement

| | |
|---|---|
| *Policy Period* | APRIL 15, 2018   TO   APRIL 15, 2019 |
| *Effective Date* | APRIL 15, 2018 |
| *Policy Number* | 3590-65-36 TPA |
| *Insured* | DATAMAXX GROUP INC |
| *Name of Company* | CHUBB CUSTOM INSURANCE COMPANY |
| *Date Issued* | APRIL 17, 2018 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

**Service Of Suit
Conditions**

**UNDER CONDITIONS, THE FOLLOWING CONDITION IS ADDED:**

In the event we fail to pay any amount claimed to be due under this insurance at your request we will submit to the jurisdiction of a court of competent jurisdiction within the United States of America. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States or to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in such suit may be made upon President, Chubb Custom Insurance Company, 202B Hall's Mill Road, P.O. Box 1650, Whitehouse Station, NJ 08889-1650, or his/her nominee.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon the request to give you a written undertaking that we will enter a general appearance in the event such a suit shall be instituted.

In accordance with any statute of any state, territory or district of the United States of America, which makes provision therefore, we designate the Superintendent, Commissioner or Director of Insurance, Secretary of State or other officer or officers specified for that purpose in the statute or his or their successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on your behalf or the behalf of any beneficiary arising out of this contract of insurance, and hereby designate President, Chubb Custom Insurance Company or his/her nominee, as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions remain unchanged.

*Authorized Representative*

| CHUBB® | Chubb North America<br>150 Allen Road<br>Suite 101<br>Basking Ridge, NJ 07920<br>USA | O (908) 605-3049<br>M (908) 455-1470<br>F (800) 644-1765<br>E david.fellerman@chubb.com |
| --- | --- | --- |

## SENT CERTIFIED MAIL - RETURN RECEIPT REQUESTED

December 17, 2018

Datamaxx Applied Technologies, Inc.
Datamaxx Group, Inc.
2001 Drayton Drive
Tallahassee, FL 32311
Attention: Stephani Miller                   via Email: stephani.miller@datamaxx.com

Re:    Insured Name:                Datamaxx Applied Technologies, Inc.;
                                       Datamaxx Group, Inc.
        Integrated Liab. & Indem. Pol. No.:  3590-65-36
        Writing Company:           Chubb Custom Insurance Company
        Primary CGL Policy No.:      3590-65-35
        Writing Company:           Pacific Indemnity Company
        Umbrella Policy No.:         7984-92-07
        Writing Company:           Federal Insurance Company
        Claim No.:                 040518065514
        Plaintiff:                  Gold Type Business Machines, Inc.

Dear Ms. Miller:

Chubb North America Claims ("Chubb"), which handles claims on behalf of Chubb Custom Insurance Company ("CCIC"), Pacific Indemnity Company ("PIC") and Federal Insurance Company ("FIC") (collectively, "Chubb") acknowledges receipt on October 29, 2018 of the Confidential American Arbitration Association Demand for Arbitration Submission ("AAA Demand") filed against Datamaxx Applied Technologies, Inc. ("Datamaxx") by Gold Type Business Machines, Inc. ("GTBM"). The AAA Demand is dated October 29, 2018 and seeks a hearing in New Jersey.

Chubb has now had the opportunity to review this matter for the purpose of analyzing coverage for the allegations and claims set forth against Datamaxx in the AAA Demand under the Integrated Liability And Indemnity Insurance / Integrated Liability And Indemnity Insurance Extension For Technology Insurance found in the Customarq Classic Insurance Program Policy 3590-65-36 ("Int. Tech Policy"), the Commercial General Liability Customarq Classic Insurance Program Policy 3590-65-35 ("Primary CGL Policy") and the Chubb Commercial Excess And Umbrella Insurance Policy 7984-92-07 ("Umbrella Policy"). These policies will be collectively referred to herein as the "Policies."

For the reasons to be discussed below, it is the position of Chubb that there is no duty to defend or indemnify Datamaxx under the Policies for the above matter as the allegations set forth in the

1



AAA Demand do not fall within the insuring agreements of the captioned Policies. Notwithstanding the allegations not satisfying the insuring agreements, the exclusions in the Policies identified below apply.

## Background

We will now summarize the allegations set forth in the AAA Demand. Please note that in doing so, we do not mean to suggest that the allegations have any merit. Moreover, although we include the allegations that we believe are pertinent to our analysis, you should refer to the AAA Demand and related materials in conjunction with this letter.

Per the AAA Demand Statement of Damages, GTBM seeks damages from, and an injunction to stop Datamaxx's alleged intentional wrongful conduct, which threatens to permanently diminish the market for the parties' jointly developed software solution and deprive GTBM of its rightful share of receivables from Datamaxx's sale of the parties' products and related technologies. It is alleged GTBM and Datamaxx agreed to jointly develop, market and sell a product called Greenlight incorporating GTBM's proprietary technology. It is further alleged Datamaxx breached the parties' agreements, specifically the Development and License Agreement ("DLA") dated December 22, 2011 and the Confidential Settlement Agreement ("SA") effective May 8, 2014 which pertained to a prior dispute in the United States District Court for the District of New Jersey captioned *Gold Type Business Machines, Inc. v. Datamaxx Applied Technologies, Inc. and LSQ Funding Group, L.C.* (Case No. 2:13-cv-05727-CCC-MF). GTBM submitted an arbitration demand to the American Arbitration Association captioned *Gold Type Business Machines, Inc. v. Datamaxx Applied Technologies, Inc.* (Case No. 18 117 Y 01081 13), alleging Datamaxx's marketing, selling, and continuing to sell, a competing product called Redtail which utilizes GTBM's technology, intellectual property, know-how and confidential information; specifically GTBM's patented process, U.S. Patent No. 7,874,005. GTBM further alleges they provided notice to Datamaxx of its alleged breaches concerning Redtail on February 22, 2017 via correspondence to you, Stephani Miller, as authored by Monica K. Lewis, COO and General Counsel for GTBM. GTBM likewise alleges Datamaxx violated the implied covenant of good faith and fair dealing, the Lanham Act and State unfair competition laws, specifically with regards to GTBM's and Datamaxx's jointly owned Federal Trademark Registration for Greenlight, Reg. No. 4363185.

The AAA Demand Statement of Damages contains five claims including Breach of the SA; Breach of the SA's Implied Covenant of Good Faith and Fair Dealing; Breach of the DLA; Breach of the DLA's Implied Covenant of Good Faith and Fair Dealing and Violations of the Lanham Act and State Unfair Competition Law.

GTBM alleges from the claimed breaches, it has suffered and will continue to suffer harm, including monetary damages and irreparable injury to GTBM's reputation, goodwill, market share, and ability to exercise control over its intellectual property, including its patented process, know-how, and other confidential information. GTBM further alleges entitlement to Datamaxx's profits on its sales of Redtail, up to three times GTBM's actual damages, punitive damages, and attorneys' fees. The Prayer for Relief likewise requests judgment for actual damages, $400,000 in liquidated damages for each material breach of the SA, interest, attorneys' fees and costs, arbitration costs, injunctive and declaratory relief and any other relief available under the SA, DLA or law.

**Policies**

As the GTBM February 22, 2017 letter makes a claim against Datamaxx for damages, specifically, the alleged withholding of revenue share, we are considering the Int. Tech Policy in effect closest to the February 22, 2017 claims-made date of loss.  For all Policies, Datamaxx Applied Technologies, Inc. is included as a Named Insured pursuant to endorsements.

CCIC issued Datamaxx a Primary Customarq Classic Insurance Program Policy 3590-65-36 for the newline, initial policy period of April 15, 2017 to April 15, 2018.  Policy 3590-65-36 includes Claims-Made Integrated Liability And Indemnity Insurance provided via Form 80-02-6016 (Ed. 7-15) as modified by Form 80-02-6017 (Ed. 7-15) titled Integrated Liability And Indemnity Insurance Extension For Technology.   Coverage D, via Form 80-02-6016 for Intellectual Property, Disclosure And Reputation Disparagement Liability, maintains an Aggregate Limit of $5,000,000 subject to a $50,000 deductible for each claim.  The Retroactive Date in effect for Coverage D is February 21, 2012.

As the Primary CGL and Umbrella Polices are occurrence based, we are considering the policies from inception, April 15, 2017, to current April 15, 2019.

PIC issued Datamaxx a Customarq Classic Insurance Program Policy numbered 3590-65-35 that encompasses the consecutive annual policy periods of April 15, 2017 to April 15, 2019.  The Primary Policy includes General Liability Insurance written under Form 80-02-2000 (Rev. 4-01) with endorsements including the aforementioned Named Insured Endorsement.  For the April 15, 2018 to April 15, 2019 policy period the Primary CGL Policy likewise includes Endorsement Form 80-02-8290 (Ed. 5-10) which is an exclusion endorsement titled *Intellectual Property Laws Or Rights*.  The Primary Policy provides limits of $1,000,000 each Occurrence, a $2,000,000 General Aggregate Limit, and an Advertising Injury and Personal Injury Aggregate Limit of $1,000,000.

FIC also issued Datamaxx a Chubb Commercial Excess And Umbrella Insurance Policy numbered 7984-92-07 that also encompasses the consecutive annual policy periods of April 15, 2017 to April 15, 2019.  The Umbrella Policy is written under Form 07-02-0815 (Rev. 7-01) which also includes endorsements, including Form 07-02-1943 (Rev. 10-12) which is an Umbrella Coverage B Exclusion endorsement titled *Privacy Exclusion Redefined - Privacy Eliminated*; Form 07-02-2260 (Ed. 7-08) which is a Policy Exclusion endorsement titled *Products Or Services Financial Injury And Technology Related Injury*; and for the April 15, 2018 to April 15, 2019 policy period, Form 07-02-2420 (Ed. 5-10) which is an Umbrella Coverage B Exclusion endorsement titled *Intellectual Property Laws Or Rights*.  For all policy periods the Umbrella Policy provides limits of $2,000,000 each Occurrence, a $2,000,000 Aggregate Limit, and a $2,000,000 Advertising Injury and Personal Injury Aggregate.

Please note that excerpts of certain policy provisions are set forth in this letter. This information is provided to assist in your review of our analysis.  The positions set forth in this letter are based on all of the provisions of the Policies, and not only on the excerpts cited herein.  Additionally, items which appear in bold font in this letter are fully defined in the Policies.  Therefore, we ask you to refer to the Policies in their entirety as you review this letter so that you may understand the terms cited.  Nothing in this letter is intended to modify the terms of the Policies, the

3

Policies' language shall control. Further, inclusion of selected provisions of the Policies does not in any way intend to limit or waive our right to rely on additional Policy terms.

## Coverage Position - Integrated Liability And Indemnity Insurance / Integrated Liability And Indemnity Insurance Extension For Technology Insurance

As the GTBM February 22, 2017 letter makes a claim against Datamaxx for damages, specifically, the alleged withholding of revenue share, we are considering the Int. Tech Policy in effect closest to the February 22, 2017 claims-made date of loss which is the initial, newline business policy period of April 15, 2017 to April 15, 2018.

It is the position of Chubb that there is no coverage for the AAA Demand and no duties are triggered on behalf of Datamaxx under the Int. Tech Policy for the allegations set forth by GTBM. The claims for damages made against Datamaxx arising from an **act** as stated in GTBM's February 22, 2017 letter pre-date the initial Chubb policy period of April 15, 2017 to April 15, 2018. This is pursuant to the Claims-Made Liability Coverage Common Provisions condition of the insuring agreement which states, in part, "With respect to all claims-made coverage, this insurance applies only if such **act** was not first committed before the applicable Retroactive Date shown in the Declarations or after the end of the policy period and a claim by a person or organization for damages for such injury (including a claim for injunctive relief to prevent such injury from continuing or resuming) is first made against any **insured** after the beginning of the policy period ... A claim will be deemed to have been made at the earliest of the following times, when notice of such claim is received and recorded by any **insured** or by us ... All claims that correlate with an **act** will be deemed to have been made at the time the first of such claims is deemed to have been made ... This coverage does not apply to any damages, loss, cost or expense in connection with any claim that correlates with an **act**, if such **act** also correlates with any claim deemed to have been made before the beginning of the policy period."

As such, if not done so already, it is strongly recommended that Datamaxx place any prior applicable E&O Insurance carrier on notice as soon as possible.

Notwithstanding the above, it is likewise Chubb's position the allegations additionally do not satisfy the insuring agreement and/or policy definitions. Per Form 80-02-6016 (Ed. 7-15) the Intellectual Property, Disclosure And Reputation Disparagement Coverage D responds to, in part, damages and **claimant costs** that the **insured** becomes legally obligated to pay, including by reason of liability of another person or organization that you assume in an **indemnity contract**, for injury caused by an **act** that results in actual or suspected **intellectual property infringement** or **reputation disparagement**. Form 80-02-6017 (Ed. 7-15) defines **intellectual property infringement** to "not include any violation of any license granted to any insured; infringement upon any software or its source content or material; other computer code or its source content or material." It is Chubb's position GTBM's allegations fall within the scope of what is not included in the definition. Per Form 80-02-6016 (Ed. 7-15) **reputational disparagement** means, in part, "electronic, oral, written or other publication of content, information or material that libels or slanders a person or organization; publication of content, information or material that disparages a person's or organization's goods, products or services; or publication, disclosure or other use of content, information or material that violates a person's right of privacy or right of publicity." While GTBM alleges harm to their reputation, same does not arise from any of the above enumerated offenses.

4

Furthermore it is Chubb's position exclusions apply to further preclude coverage in its entirety. Form 80-02-6017 (Ed. 7-15) contains the exclusions titled *Intellectual Property Laws Or Rights (Except Coverage D)* which states, in part, "This insurance does not apply to any damages, loss, cost or expense arising out of, giving rise to or in any way related to any actual, alleged or threatened assertion or infringement or violation by any person or organization (including any **insured**) of any **intellectual property law or right**. Further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation of or a reference to an infringement or violation of any **intellectual property law or right**, even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**. With respect to Coverage D only, this exclusion applies unless the only infringement or violation of an **intellectual property law or right** is one that is described in the definition of **intellectual property infringement**." Per Form 80-02-6016 (Ed. 7-15) **intellectual property law or right** "means any certification mark, copyright, patent or trademark (including collective or service marks); right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;…" The exception to the exclusion does not apply since, as per the discussion above, the allegations do not satisfy the definition of **intellectual property infringement,** and because there are the additional allegations of patent and trademark violations.

Other exclusions, in particular the exclusions for *Continuing Acts, Antitrust Or Restraint Of Trade, Cost Of Contract Or Restitution, Equitable Relief (Except Privacy Remediation Expenses), Expected Or Intended Injury* and *Maintenance Of Contracts Of Licenses* also apply to further limit, or completely bar, coverage for allegations in this matter.

## Coverage Position – Primary Commercial General Liability Policy

We will now analyze coverage under the Primary CGL Policy issued to Datamaxx for the consecutive annual policy periods of April 15, 2017 to April 15, 2019.

It is Chubb's position the allegations of breach of contract and violations of the Lanham Act and State Unfair Competition Law do not constitute **Bodily Injury** or **Property Damage** caused by an **Occurrence** or a **Personal Injury** or **Advertising Injury** as defined in the policy Form 80-02-2000 (Rev. 4-01). As such, these claims do not fall within the insuring agreements of the Primary CGL Policy. Furthermore, similarly to the Int. Tech Policy as noted above, Form 80-02-2000 (Rev. 4-01) contains the Exclusion titled *Intellectual Property Laws Or Rights*, as well as endorsement Form 80-02-8290 (Ed. 5-10) similarly titled, which functions to bar coverage in its entirety for this matter. Other exclusions, in particular the exclusions titled *Contracts, Breach of Contract, Continuing Offenses, Loss In Progress, Expected or Intended Injury, Internet Activities,* and *Prior Offenses* may also have applicability to further limit, or completely bar, coverage for allegations in this matter.

## Coverage Position – Chubb Commercial Excess and Umbrella Insurance

We will now analyze coverage under the Umbrella Policy issued to Datamaxx for the consecutive annual policy periods of April 15, 2017 to April 15, 2019.

Coverage A, in large part, follows the terms and conditions of the Scheduled Underlying Insurance; in this case, the scheduled underlying insurance for the Umbrella Policy is the Primary CGL Policy 3590-65-35, only (not 3590-65-36), which was previously addressed in this letter. Since Chubb has already advised you that no coverage exists for this claim under policy 3590-65-35, Chubb advises that no coverage applies under Coverage A of policy 7984-92-07 for the same reasons.

Coverage B of policy 7984-92-07 is stand-alone coverage with its own terms and conditions. However, the same Insuring Agreements, definitions and exclusions under the Primary CGL Policy identified above also appear under Coverage B of the Umbrella Policy. Furthermore, Policy Exclusion Form 07-02-2420 (Ed. 5-10) titled *Intellectual Property Laws Or Rights* excludes coverage in its entirety under Coverage B in the exact same fashion as described above in the Primary CGL discussion as per the similarly titled exclusion. Form 07-02-2260 (Ed. 7-08) titled *Products Or Services Financial Injury And Technology Related Injury* deletes all references to **advertising injury** and **personal injury** for Coverage B and as a Policy Exclusion, excludes coverage for any **product or service financial injury** or **technology-related injury**. As such, no coverage applies under Coverage B, and Coverage A, for the same reasons cited under policy 3590-65-35.

Notwithstanding the positions taken above, Chubb reserves the right to deny coverage in this matter on behalf of Datamaxx under the above Policies for any and all of the following reasons:

1. There is no coverage for any relief sought that is equitable, declaratory or injunctive in nature, or for any non-monetary relief, as such requests for relief do not fall within the insuring agreements of any of the above Policies and also do not constitute damages;

2. There is no coverage under the Policies for any fines, attorney's fees or costs of suit and disbursements as these damages do not fall within the insuring agreements of the Policies;

3. It is against public policy in the State of Florida to insure punitive damages that are assessed directly against a person for his or her own wrongful conduct. As such, there is no coverage for the alleged punitive damages.

## Conclusion

It is the position of Chubb that there is no duty to defend or indemnify Datamaxx and no duties have been triggered for the above matter as the allegations set forth in the AAA Demand do not fall within the insuring agreements of the captioned Policies and notwithstanding, the outlined exclusions in the Policies apply.

Chubb reserves the right to have a court of competent jurisdiction render an opinion as to the duties and obligations under the Policies. We further reserve the right to review this matter further should a Complaint be filed and/or additional allegations not currently known are brought to our attention. Any judgment or settlement obtained by GTBM that falls outside the insuring agreements of the Policies shall be the responsibility of Datamaxx and not that of Chubb.

The analysis of coverage outlined herein is not meant to be exhaustive. We reserve the right to re-examine and re-analyze all coverage issues involved and not merely those raised by any additional information or evidence. By limiting policy references to those cited, Chubb does not waive any other policy provisions. We reserve the right to assert additional reasons to disclaim coverage based upon the terms and conditions of the Policies or additional facts, whether now known or discovered in the future. The Policies, in their entirety, are incorporated herein by reference as if they had been stated in full.

Datamaxx is a valued customer and we are prepared to reevaluate our position should a Complaint be filed or if there are any material changes in the allegations or in the facts. If you have any additional information or coverage theories that you believe may have a bearing upon our analysis, please advise us immediately for our further consideration.

We work in a paperless environment and should it be necessary to direct any physical documentation to my attention, please send your correspondence to:

> Chubb North America
> PO Box 4700
> Chesapeake, VA 23327-4700
> USA

It is extremely important that your correspondence contain the claim number displayed conspicuously on the cover page of your documentation so all papers can be scanned and attached electronically to the claim file.

If you have any questions, or would like to discuss this matter further, please contact me directly at (908) 605-3049 during normal business hours or by email at david.fellerman@chubb.com.

Sincerely,


David Fellerman, CCLA
Sr. Claim Director, Casualty Claims
Chubb North America on behalf of Chubb Custom Insurance Company,
Pacific Indemnity Company and Federal Insurance Company
150 Allen Road, Suite 101
Basking Ridge, NJ 07920
Phone:  908-605-3049
Mobile: 908-455-1470
Fax:     800-664-1765
Email:  david.fellerman@chubb.com

cc:     Will Messer, via Email: wmesser@earlbacon.com

7



COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

EXHIBIT 

AMERICAN ARBITRATION ASSOCIATION®  |  INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**













C







































